NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| | : | **Hon. Dennis M. Cavanaugh** |
| IN RE MERCK & CO., INC. VYTORIN / | : | |
| ZETIA SECURITIES LITIGATION | : | **OPINION** |
| | : | |
| | : | Civil Action No. 08-CV-2177 (DMC) |
| THIS DOCUMENT RELATES TO ALL | : | |
| CASES | : | |
| | : | |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon motion by Defendants Merck & Co., Inc. ("Merck"), MSP Distribution Services LLP ("M/S-P"), Richard T. Clark, Peter S. Kim, Judy C. Lewent, Deepak Khanna and Wendy L. Yarno ("Defendants") to dismiss Plaintiffs' claims under the Exchange Act of 1934 (the "Exchange Act") for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). Pursuant to Fed. R. Civ. P. 78, no oral argument was heard. After considering the submissions of the parties, and based upon the following, Defendants' motion to dismiss is **denied**.

## I.   BACKGROUND

Plaintiffs, purchasers of Merck securities during the period May 1, 2006 to March 28, 2008, allege that Defendants are liable for unlawful misstatements and omissions made in connection with the cholesterol drug Vytorin and the related ENHANCE clinical trial. The initial Complaint was filed on May 5, 2008, and a Consolidated Class Action Complaint was filed on October 6, 2008. The Consolidated Class Action Complaint raises three claims sounding in

fraud under Sections 10(b), 20(a) and 20A of the Exchange Act.  Before the Court is Defendants'

motion to dismiss the Consolidated Class Action Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

II.      LEGAL STANDARDS

    A.      *Rule 12(b)(6)*

        Courts considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) must

determine whether the complaint contains sufficient factual matter, accepted as true, to "state a

claim to relief that is plausible on its face."  See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).

Facial plausibility exists when the plaintiff pleads factual content "that allows the court to draw a

reasonable inference that the defendant is liable for the misconduct alleged."  Id.; see also

Marangos v. Swett, 2009 WL 1803264, *2 (3d Cir. June 25, 2009).  While the plausibility

standard "is not akin to a probability requirement," it does require more than "a sheer possibility

that a defendant has acted unlawfully."  Iqbal, 129 S. Ct. at 1949.

        Well-pleaded factual content is accepted as true for purposes of determining whether the

complaint states a plausible claim for relief.  See Warth v. Seldin, 422 U.S. 490, 501 (1975);

Trump Hotels & Casino Resorts, Inc., v. Mirage Resorts Inc., 140 F.3d 478, 483 (3d Cir. 1998).

This assumption does not apply, however, to legal conclusions or "[t]hreadbare recitals of the

elements of a cause of action, supported by mere conclusory statements."  See Iqbal, 129 S. Ct. at

1949; Marangos, 2009 WL 1803264, at *2.  Indeed, "where the well-pleaded facts do not permit

the court to infer more than a mere possibility of misconduct, the complaint has alleged—but it

has not shown—that the pleader is entitled to relief."  See Iqbal, 129 S. Ct. at 1949; Marangos,

2009 WL 1803264, at *2.

B.      *Section 10(b) of the Exchange Act*

Section 10(b) of the Exchange Act prohibits the use of fraudulent schemes or devices in connection with the purchase or sale of securities.  See 15 U.S.C. § 78j(b).  Rule 10b-5 makes it illegal, in connection with the purchase or sale of securities, to "make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading."  See 17 C.F.R. § 240.10b-5.  Claims under Section 10(b) and Rule 10b-5 must allege: (1) a material misrepresentation or omission; (2) *scienter*; (3) a connection with the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation.  See In re Suprema Specialties, Inc. Sec. Litig., 438 F.3d 256, 275 (3d Cir. 2006) (citing Dura Pharms., Inc. v. Broudo, 544 U.S. 336, 341–42 (2005)).  "If a complaint fails to meet the stringent pleading requirements for sustaining a 10(b) claim, the appropriate sanction is dismissal."  See Key Equity Investors, Inc. v. Sel-Lab Marketing Inc., 246 Fed. App'x 780, 785 (3d Cir. 2007).

C.      *Rule 9(b)*

Because Section 10(b) claims sound in fraud, plaintiffs must also satisfy the heightened pleading standard of Fed. R. Civ. P. 9(b).  Rule 9(b) requires that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  In other words, plaintiffs asserting securities fraud claims must specify "the who, what, when, where and how" of the events at issue.  See Key Equity Investors, 246 Fed. App'x at 784.  This heightened pleading standard "give[s] defendants notice of the claims against them, provide[s] an increased measure of protection for their reputations, and reduce[s] the number of frivolous suits

brought solely to extract settlements."  Id. at 784 n.5 (quoting In re Suprema Specialties, 438

F.3d at 270).  The standard is "relaxed somewhat where the factual information is peculiarly

within the defendant's knowledge or control."  See In re Burlington Coat Factory Sec. Litig., 114

F.3d 1410, 1418 (3d Cir. 1996).

     D.    *Private Securities Litigation Reform Act*

     In addition to the requirements of Rule 9(b), claims of securities fraud must also satisfy

the heightened pleading requirements of the Private Securities Litigation Reform Act (the

"PSLRA").  The PSLRA requires that securities fraud claims set forth "each statement alleged to

be misleading, the reason or reasons why the statement is misleading, and, if an allegation

regarding the statement or omission is made on information or belief, the complaint shall state

with particularity all facts on which that belief is formed."  See 15 U.S.C. § 78u-4(b)(1); Key

Equity Investors, 246 Fed. App'x at 784.  With respect to *scienter*, the PSLRA requires that a

plaintiff "state with particularity facts giving rise to a strong inference that the defendant acted

with the required state of mind."  See Key Equity Investors, 246 Fed. App'x at 784.  A complaint

may be said to create a "strong inference" of *scienter* "only if a reasonable person would deem

the inference of *scienter* cogent and at least as compelling as any opposing inference one could

draw from the facts alleged."  See id. (quoting Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551

U.S. 308, 324 (2007)).

     E.    *Section 20(a) of the Exchange Act*

     Section 20(a) "imposes joint and several liability on any person who controls a person

liable under any provision of the [Exchange Act]."  See In re Alpharma Inc. Sec. Litig., 372 F.3d

137, 153 (3d Cir. 2004) (internal quotations omitted).  Claims under Section 20(a) must show:

(1) "an underlying violation by a controlled person or entity"; and (2) "that the defendants are

controlling persons, and that they were in some meaningful sense culpable participants in the

fraud perpetrated by the controlled persons."  See In re Cendant Corp. Sec. Litig., 60 F. Supp. 2d

354, 379 (D.N.J. 1999).  Because Section 20(a) is a derivative offense, a predicate violation of

the Exchange Act must exist in order for it to be applicable.  See 15 U.S.C. § 78t(a).

   F. *Section 20A of the Exchange Act*

   Section 20A creates a private cause of action for contemporaneous traders to sue those

who violated the Exchange Act or its rules by insider trading or tipping.  See 15 U.S.C. § 78t-1;

In re Cendant Corp., 60 F. Supp. 2d at 378.  Similar to Section 20(a), "claims under [S]ection

20A are derivative, requiring proof of a separate underlying violation of the Exchange Act."  See

In re Advanta Corp. Sec. Litig., 180 F.3d 525, 541 (3d Cir. 1999).  A plaintiff must allege: "(1)

trading by a corporate insider; (2) a plaintiff who traded contemporaneously with the insider; and

(3) that the insider traded while in possession of material nonpublic information, and thus is

liable for an independent violation of the Exchange Act."  See In re Cendant Corp., 60 F. Supp.

2d at 378 (internal quotations omitted).

**III.** **DISCUSSION**

   Plaintiffs raise claims for securities fraud pursuant to Sections 10(b), 20(a) and 20A of

the Exchange Act.  This Court finds that Plaintiffs have properly pled all of their claims under

the Exchange Act, therefore, Defendants' motion to dismiss is denied.

A.      *Section 10(b) Claims*

Defendants argue that Plaintiffs' securities fraud claims under 10(b) and 10b-5 should be dismissed because the Complaint fails to adequately plead: (1) that the ENHANCE results were material to Merck shareholders;  (2) that the disclosure of those results caused the shareholders' loss; (3) that Defendants acted with the necessary *scienter*; (4) that Schering-Plough Corp.'s ("Schering") misrepresentations were made in connection with the purchase or sale of Merck stock; and (5) that M/S-P made false or misleading statements.  The Court disagrees.

First, Plaintiffs have adequately pled that Defendants' failure to disclose the results of the ENHANCE study is a material omission.  Material information is "information that would be important to a reasonable investor in making his or her investment decision."  See Oran v. Stafford, 226 F.3d 275, 282 (3d Cir. 2000); Basic Inc. v. Levinson, 485 U.S. 224, 231–32 (1988). In the context of an efficient securities market, the Third Circuit has instructed courts to measure materiality "post hoc by looking to the movement, in the period immediately following disclosure, of the price of the firm's stock."  See Oran, 226 F.3d at 282.  But see In re Take-Two Interactive Sec. Litig., 551 F. Supp. 2d 247, 291–92 (S.D.N.Y. 2008) (noting that the Third Circuit's "special rule" for measuring materiality in the context of an efficient securities market "is a matter of significant doubt in [the Second] Circuit").  Here, Defendants argue that Plaintiffs failed to adequately allege a material misstatement or omission because the price of Merck's stock was not significantly affected by the March 9, 2007, January 14, 2008 or March 30, 2008 disclosures of the ENHANCE study results.  Review of the Complaint, however, reveals that Plaintiffs did indeed allege significant drops in the price of Merck's stock following the

-6-

disclosures, including a 12% decline within five days of the January 14 disclosures, and a 15% decline within three days of the March 30 disclosures.  See, e.g., In re Merck & Co., Sec. Litig., 432 F.3d 261, 269 (3d Cir. 2005) (noting that the "period immediately following disclosure . . . does not mean instantaneously" while measuring stock volatility over a course of days). Accordingly, because Plaintiffs adequately allege that Merck's stock price experienced significant drops "immediately following" disclosure of the ENHANCE study test results, the Court finds it "plausible on its face" that Defendants' misstatements and omissions relating thereto were indeed "material."

Second, the Court finds that Plaintiffs have adequately alleged loss causation.  Plaintiffs raising a claim for securities fraud must plead a "causal connection" between the alleged misrepresentation and the loss.  See Dura, 544 U.S. at 342, 346-47.  Echoing their materiality argument, Defendants argue that because Merck's stock price declined by less than 0.2% on March 9, 2007 and January 14, 2008, two of the days on which the ENHANCE results are alleged to have been publicly disclosed, Plaintiffs cannot demonstrate that any loss in value to shareholders was caused by Defendants' alleged misstatements and omissions concerning ENHANCE.  As stated above, however, the Complaint adequately alleges that Merck's stock price experienced significant declines in the period "immediately following" the ENHANCE disclosures on January 14 and March 30, 2008.  Accordingly, Defendants' motion to dismiss on this basis is also denied.

The Court also finds that Plaintiffs have raised sufficient facts to create a "strong inference" of *scienter* that is "at least as likely as any plausible opposing inference."  See Tellabs,

551 U.S. at 328. *Scienter* is a "mental state embracing intent to deceive, manipulate, or defraud, and requires a knowing or reckless mind." See Institutional Investors Group v. Avaya, Inc., 564 F.3d 242, 252 (3d Cir. 2009) (internal citations omitted). Here, the Complaint includes a series of specific factual allegations demonstrating that Defendants had knowledge of the ENHANCE study results prior to its December 2007 unblinding and that they took actions to delay and manipulate the release of those results, including, for example, that Defendants Yarno, Lewent and Clark engaged in "suspicious" insider trading, and that Defendants had substantial opportunity to engage in fraudulent acts due to their executive-level positions at Merck and Merck's control over the ENHANCE data. Defendants dispute many of these allegations, arguing that they lack sufficient particularity to satisfy the heightened pleading standards of Rule 9(b) and the PSLRA, and that, in any event, the only plausible inference to be drawn therefrom is that Defendants' actions were "fully consistent with non-fraudulent, responsible scientific inquiry." At the motion to dismiss stage, however, the Court is obliged to accept all factual allegations in the Complaint as true, and to determine whether such allegations "state a claim to relief that is plausible on its face." Here, the Court finds that the inference of *scienter* created by Plaintiffs' allegations is "at least as compelling" as any other plausible inference that may be drawn therefrom, including Defendants' contention that it was simply acting in the name of "responsible scientific inquiry." Accordingly, Defendants' motion to dismiss on this basis is denied.

Nor does the Court find any merit in Defendants' terse arguments that the Complaint does not allege misrepresentations made in connection with the purchase or sale of Merck stock, and

that Plaintiffs have failed to allege any false or misleading statements by M/S-P.  First, with

respect to Section 10(b)'s requirement that the statements at issue be made "in connection with

the purchase or sale of any security," the Court finds that Schering's alleged statements relating

to Vytorin and ENHANCE could be imputed to Merck due to its status as a party to the M/S-P

joint venture set up to develop and market Vytorin.  See, e.g., United States v. USX Corp., 68

F.3d 811, 826 (3d Cir. 1995).  For similar reasons, the Court finds that the misstatements and

omissions alleged against the officers and directors of Merck and Schering concerning

ENHANCE and Vytorin could be attributable to the M/S-P joint venture.  Accordingly,

Defendants' motion to dismiss the Section 10(b) claim is denied.

      B.     *Section 20(a) Claims*

      Defendants next argue that the controlling person claims under Section 20(a) against

Defendants Clark, Kim, Lewent, Khanna and Yarno (the "Individual Defendants") must be

dismissed because Plaintiffs failed to allege a predicate violation of the Exchange Act or that the

Section 20(a) Defendants were "culpable participants" therein.  The Court disagrees.  Claims

under Section 20(a) must show: (1) "an underlying violation by a controlled person or entity";

and (2) "that the defendants are controlling persons, and that they were in some meaningful sense

culpable participants in the fraud perpetrated by the controlled persons."  See In re Cendant

Corp., 60 F. Supp. 2d at 379.  Here, the Court has already held that the Complaint states a viable

claim against Merck for violations of the Exchange Act.  Additionally, the Court finds that the

Complaint adequately alleges both that the Individual Defendants exercised control over Merck

based upon their executive-level positions within the Company and that they could be culpable

participants in Merck's underlying violations of the Exchange Act.  Accordingly, Defendants'

motion to dismiss the Section 20(a) claims is denied.

      C.     *Section 20A Claims*

      Defendants' motion to dismiss the Section 20A claims against Defendants Clark, Lewent,

Yarno and Merck is denied.  Claims for insider trading under Section 20A must allege:  (1) a

predicate violation of the Exchange Act; (2) that the plaintiff traded contemporaneously with the

insider; and (3) that the insider was in possession of material nonpublic information.  See In re

Cendant Corp., 60 F. Supp. 2d at 378.  The Court has already held that the Complaint properly

alleges a predicate violation of Sections 10(b) and 20(a) against Clark, Lewent and Yarno.

Additionally, the Complaint states with particularity that each of the Section 20A Defendants

sold stock contemporaneously with certain Plaintiffs while possessing material, non-public

information about the ENHANCE study results.  See 15 U.S.C. § 78t-1(a).  The Complaint also

states a viable claim for "tipping" against Merck because it alleges that Merck communicated the

results of the ENHANCE study to the Section 20A Defendants while failing to disclose that

information to investors.  See 15 U.S.C. § 78t-1(c).  Accordingly, Defendants' motion to dismiss

the Section 20A claims is denied.

-10-

**III.**   <u>C</u>ONCLUSION

For the reasons stated, Defendants' motion to dismiss is **denied**.  An appropriate Order accompanies this Opinion.

  S/ Dennis M. Cavanaugh     
Dennis M. Cavanaugh, U.S.D.J.

Date:       August   31  , 2009
Orig.:      Clerk
cc:         All Counsel of Record
            Hon. Mark Falk, U.S.M.J.
            File