UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE MERCK & CO., INC. VYTORIN/ZETIA SECURITIES LITIGATION | Civil Action No. 08-2177 (DMC) (JAD) |

### DECLARATION OF JEFF A. ALMEIDA IN SUPPORT OF LEAD PLAINTIFFS' REPLY TO DEFENDANTS' LIMITED OPPOSITION TO MOTION FOR LEAVE TO FILE THE FIRST AMENDED CONSOLIDATED COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

JEFF A. ALMEIDA, declares as follows:

1. I, Jeff A. Almeida, am a Director of the Law firm of Grant & Eisenhofer P.A. and a member of the bar of this Court. I have personal knowledge of the facts set forth herein, and if called as a witness, I will competently testify consistent with the factual averments made herein.

2. As part of their thorough investigation of the fraud committed by Merck in suppressing the negative clinical trial results of ENHANCE, Lead Plaintiffs' counsel hired investigators to seek out former employees and witnesses who might be willing to provide relevant knowledge.

3. Subsequent to these investigative interviews, on August 6, 2010, I personally telephoned Ms. Nancy Behrens, who is "CW 1" in the original Consolidated Class Action Complaint for Violations of the Federal Securities Laws, filed on October 6, 2008 in Civil Action No. 08-2177 (DMC) (JAD) (the "Complaint") (Dkt 24). I informed Ms. Behrens who I was and told her that because statements she made to private investigators were used by plaintiffs in litigation with Merck, we were preparing to disclose her name to Merck's attorneys unless she had good grounds to continue to remain anonymous. Ms. Behrens became extremely

aggressive and angry (unusually so) and demanded that we not disclose her identity to Merck's attorneys or anyone else.

4. Ms. Behrens stated very clearly during this conversation that she absolutely wanted to preserve her confidentiality because in her present position at a medical marketing firm she depended heavily in her business on Merck and her former colleagues and connections at Merck. She told me very clearly that she feared that disclosure of her identity would destroy those relationships, and would compromise her business and employment. She threatened to sue me and my law firm if we disclosed her identity to Merck.

5. I informed Ms. Behrens that we could endeavor to keep her identity confidential through the submission of an affidavit executed by her, but I expressly provided no promises that we could keep her identity confidential. I informed Ms. Behrens that the best way for us to help preserve her confidentiality would be for her to execute an affidavit, setting forth the facts that she relayed to me regarding her strong fears of retaliation or retribution by Merck given her present business relationships and employment with a Merck vendor. I also asked her if she had spoken truthfully to the investigators during her telephone interviews, and she confirmed that she had.

6. At that point, I sent Ms. Behrens an initial draft affidavit for her review and approval. Ms. Behrens, who remained very angry, irate and uncooperative, expressed concerns about statements in the affidavit and statements that were being attributed to her in the litigation. She told she me she would edit the affidavit, and I told her to make edits and changes to make "it as accurate as possible." Ms. Behrens transmitted edits and changes to the affidavit to me, and after two rounds of editing, she ultimately returned to me an affidavit that was acceptable to her with her electronic signature.

7. At no time did I press, urge or suggest to Ms. Behrens that she should sign a false affidavit. To the contrary, I told her to edit it to make it accurate.

8. At no time did Ms. Behrens inform me that anything attributed to her in ¶169 of the Complaint contained any factual inaccuracies.

9. Although Ms. Behrens informed me that she did not agree with the statements being attributed to her in ¶503 of the Complaint, at no time did Ms. Behrens provide me with any details regarding specific factual averments in ¶ 503 that she believed to be false, inaccurate or misleading. Ms. Behrens merely informed me that she believed it was "incorrect" as a general matter and "out-of-context."

10. Attached hereto as Exhibit A is a true and correct copy of relevant excerpts from the Deposition of Joseph Amaru, dated June 1, 2011.

11. Attached hereto as Exhibit B is a true and correct copy of relevant excerpts from the Deposition of Barry Scarborough, dated June 13, 2011.

12. Attached hereto as Exhibit C is a true and correct copy of relevant excerpts from the Deposition of Raymond Skelly, dated June 20, 2011.

13. Attached hereto as Exhibit D is a true and correct copy of relevant excerpts from the Deposition of Dr. M. Gene Bond, dated February 24, 2011.

14. Attached hereto as Exhibit E is a true and correct copy of Plaintiffs' Exhibit 77.

15. Attached hereto as Exhibit F is a true and correct copy of Plaintiffs' Exhibit 82.

16. Attached hereto as Exhibit G is a true and correct copy of Plaintiffs' Exhibit 79.

17. Attached hereto as Exhibit H is a true and correct copy of Plaintiffs' Exhibit 98.

18. Attached hereto as Exhibit I is a true and correct copy of Plaintiffs' Exhibit 99.

19. Attached hereto as Exhibit J is a true and correct copy of Plaintiffs' Exhibit 65.

20. Attached hereto as Exhibit K is a true and correct copy of relevant excerpts from the Deposition of Dr. Thomas Musliner, dated March 17, 2011.

21. Attached hereto as Exhibit L is a true and correct copy of an email exchange between me and Nancy Behrens dated August 11, 2010.

This declaration is executed in Wilmington, Delaware on June 28, 2011 under penalties of perjury pursuant to the laws of the United States.

Dated: June 28, 2011

By: /s/ Jeff A. Almeida
JEFF A. ALMEIDA