# TOMPKINS, McGUIRE, WACHENFELD & BARRY, LLP

*Counselors at Law*

FOUR GATEWAY CENTER
100 MULBERRY STREET
NEWARK, NEW JERSEY 07102-4056
Newark (973) 622-3000
New York (212) 714-1720
Fax (973) 623-7780
www.tompkinsmcguire.com

William B. McGuire
*Managing Partner*

Tel: (973) 623-7750
E-Fax: (973) 623-7744
wmcguire@tompkinsmcguire.com

July 1, 2011

**VIA ECF**

Hon. Dennis M. Cavanaugh, U.S.D.J.
Frank R. Lautenberg United States
Post Office & Courthouse
1 Federal Square, Room 451
Newark, New Jersey 07102

Re:   *In re Merck & Co., Inc. Vytorin/Zetia Securities Litigation*
      Civil Action No. 08-2177 (DMC) (JAD)

Dear Judge Cavanaugh:

As noted in the accompanying cover letter seeking leave to file this sur-reply, Defendants respectfully submit this letter: (a) to apprise the Court of a new development and (b) to address arguments Plaintiffs raise for the first time on reply.

1. **Another Confidential Witness Has Disputed The Statements Plaintiffs Attribute To Him In The Complaint**

Defendants' opposition papers demonstrated that Plaintiffs' proposed Amended Complaint contains allegations attributed to "confidential witnesses" that those witnesses dispute. Defendants argued that Plaintiffs' proposed amendment does not go far enough because it does not strike all of the passages that the witnesses have disowned. In their reply papers, filed on June 28, 2011, Plaintiffs admit that they needed to strike the statements incorrectly attributed to CW 1, but resist making changes based on the disavowals of CWs 3 and 5. Plaintiffs state that "[n]o other CWs . . . provided any basis for Lead Plaintiffs to further amend the complaint." (Rep. Br. at 3.)

This is incorrect. As Plaintiffs know, on June 20, 2011, yet another "confidential witness" – CW 8 – renounced the statements ascribed to him in the Complaint. Although this testimony was taken too late to be included in Defendants' opposition papers, it occurred more than one week before Plaintiffs' filed their reply papers.

CW 8 testified that the allegations attributed to him in the Complaint contained "half-truths and some false statements" (Ex. B at 65) and were "riddled with inaccuracies." (Ex. B at 79.) The Complaint misstates the basic facts about CW 8, inflating his position by incorrectly giving him the title and role as a "Merck research director" (Ex. B at 65-67), when he was an information technology specialist for research services (Ex. B at 16-17), and falsely alleging that he worked at Merck "through August 2008," when CW 8 left Merck in February 2007 – long before many of the key events in the ENHANCE trial had occurred. (Ex. B at 22-23, 25, 71.)

**TOMPKINS, McGUIRE, WACHENFELD & BARRY**
2

Even worse, the Complaint misleadingly attributes views to CW 8 that he never held or expressed. CW 8 had no first-hand knowledge of, and paid no attention to, Vytorin or the ENHANCE trial while working at Merck. (Ex. B at 22, 94-97.) These facts, however, did not deter Plaintiffs, who in a call to CW 8 in 2008 charged that Merck acted improperly with respect to the ENHANCE trial, asked CW 8 to react to those allegations, and then ascribed significance in the Complaint to the fact that CW 8 was surprised at Plaintiffs' statements. Thus, the Complaint alleges that CW 8 was "shocked when s/he learned that Merck had had results of the ENHANCE study for almost two years before publication." (Docket Entry 24, ¶ 168). This allegation is wildly misleading, because it incorrectly implies that CW 8 believed that Merck had advance knowledge of the ENHANCE results when, to the contrary, he disagreed with Plaintiffs' allegations of wrongdoing. CW 8's "shock" was at Plaintiffs' accusations leveled at Merck, not at anything he believed Merck had done or known. (Ex. B at 55.) As CW 8 testified: "I don't believe that. I would be shocked." (Ex. B at 65.)

The Complaint also states that CW 8 "did not know why there was no steering committee for the study." (Docket Entry 24, ¶ 168.) But as CW 8 testified, the management of clinical trials was not his specialty or expertise, so CW 8 had no way of knowing why there was or was not a steering committee, and was not even sure what a steering committee is. (Ex B. at 83-88.) Furthermore, the statement attributed to CW 8 in the Complaint carried an "implication [] that lack of a steering committee is a bad thing." (Ex. B at 89.) CW 8 did not agree that a "steering committee" was needed in view of the presence of another reviewing body, known as an institutional review board. (Ex B. at 85-87, 89.)

CW 8 explained that he did not give Plaintiffs consent to be quoted in the Complaint because he "didn't want to make any on-the-record statements unless I rigorously evaluated them first." (Ex. B at 92-93, 34-35, 63.) When he discovered that Plaintiffs quoted him anyway – misleadingly, and without affording him an opportunity to review the statements – CW 8 testified that he felt "manipulated" by Plaintiffs and wanted to "wash my hands of, you know, anything to do with these people." (Ex. B at 45-48.)

The Amended Complaint does not correct any of the statements Plaintiffs falsely attribute to CW 8, and Defendants now add CW 8's statements to their opposition.

### 2.     Plaintiffs Were Required To Strike The False Statements In Their Pleadings

For the first time on reply, and without citation to any supporting cases, Plaintiffs argue that they were not required to strike false statements from their Complaint when they learned of them no later than the summer of 2010. They claim that Federal Rule of Civil Procedure 15 and the Scheduling Order in this case allowed them to keep false statements in the Complaint until June 2011, during the course of deposition discovery. This is incorrect.

The Scheduling Order simply provides that "[t]he parties may have until June 3, 2011 to file any motion to amend the pleadings." (Docket Entry 148, ¶ 1.) The Order did not preclude Plaintiffs from seeking to strike false statements from their Complaint earlier.

And Rule 15 also did not require Plaintiffs to wait a year to take out the false statements. On the contrary, it provides that a party may amend its pleading at any time "with the opposing party's written consent or the court's leave" – noting that "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). This is consistent with other rules requiring attorneys to correct statements once they appreciate that they cannot be supported. *See, e.g.*, N.J.

**TOMPKINS, McGUIRE, WACHENFELD & BARRY**

3

R.P.C. 3.3(a)(4) ("If a lawyer has offered material evidence and comes to know of its falsity, the lawyer shall take reasonable remedial measures."); *First Central Sav. Bank* v. *Meridian Res. Capital*, 2011 WL 1240100, at * 3 (E.D.N.Y. Mar. 30, 2011) (plaintiff "must promptly take any necessary steps to correct or amend misleading documents").

Plaintiffs also attempt to blame their delay on Defendants, arguing it was Defendants' "foot-dragging in document discovery" (Rep. Br. at 2) that somehow caused them to keep false statements in their Complaint. This is nonsense. Multiple witnesses have testified that they told Plaintiffs that the Complaint was false and misleading. Plaintiffs did not need Defendants' documents to know this.

Plaintiffs also argue, for the first time in reply, that amending before June 2011 had "the potential for prejudicing their entire case through a premature amendment designed only to remove a few immaterial sentences or phrases attributed to a CW." (Rep. Br. at 2.) This gets it backwards. Plaintiffs are not prejudiced by being required to remove false statements – but the Court and Defendants are prejudiced by having false allegations remain in the case. And, as we show in our opposition papers, the statements are far from immaterial.

Finally, for the first time on reply, Plaintiffs minimize the significance of the witnesses who have already rejected statements attributed to them, claiming that Defendants deposed "only four CWs" and that the other depositions are not "presently scheduled." (Rep. Br. at 3 n.1.) As Plaintiffs well know, Defendants recently adjourned previously scheduled depositions – including that of CW 1 – pending receipt of documents from Plaintiffs relating to "confidential witnesses" that Defendants requested in April 2010. Plaintiffs dragged their feet and first produced some of these documents only on June 28, 2011. Defendants are currently conferring with Plaintiffs about these issues. If they are not resolved, Defendants will enlist the aid of Magistrate Judge Dickson to obtain all relevant documents from Plaintiffs and to schedule the depositions of the remaining confidential witnesses after Plaintiffs' document production is complete.

Based upon the foregoing, Plaintiffs should be required to strike from the proposed Amended Complaint all statements attributed to "confidential witnesses" that have been repudiated, or for which they know they lack adequate support. Defendants reserve the right to seek further relief after discovery of the confidential witnesses is complete.

We thank the Court for its consideration of this matter.

Respectfully submitted,

*/s/ William B. McGuire*

William B. McGuire
For   TOMPKINS, McGUIRE, WACHENFELD & BARRY

cc: All Counsel (Via ECF)