# CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY & AGNELLO, P.C.
## COUNSELLORS AT LAW

| | | | | |
|---|---|---|---|---|
| CHARLES C. CARELLA | JAMES T. BYERS | **5 BECKER FARM ROAD** | RICHARD K. MATANLE, II | RAYMOND J. LILLIE |
| BRENDAN T. BYRNE | DONALD F. MICELI | **ROSELAND, N.J. 07068-1739** | FRANCIS C. HAND | WILLIAM SQUIRE |
| PETER G. STEWART | A. RICHARD ROSS | **PHONE (973) 994-1700** | AVRAM S. EULE | ALAN J. GRANT° |
| ELLIOT M. OLSTEIN | KENNETH L. WINTERS | **FAX (973) 994-1744** | RAYMOND W. FISHER | RAYMOND E. STAUFFER° |
| ARTHUR T. VANDERBILT, II | JEFFREY A. COOPER | www.carellabyrne.com | | STEPHEN R. DANEK |
| JAN ALAN BRODY | CARL R. WOODWARD, III | | OF COUNSEL | ERIC MAGNELLI |
| JOHN M. AGNELLO | MELISSA E. FLAX | | | DONALD A. ECKLUND |
| CHARLES M. CARELLA | DENNIS F. GLEASON | | | VINCENZO M. MOGAVERO |
| JAMES E. CECCHI | DAVID G. GILFILLAN | | | AUDRA E. PETROLLE |
| | G. GLENNON TROUBLEFIELD | | | °MEMBER N.Y. BAR ONLY |
| | BRIAN H. FENLON | | | |
| JAMES D. CECCHI (1933-1995) | KHOREN BANDAZIAN | | | |
| JOHN G. GILFILLAN III (1936-2008) | LINDSEY H. TAYLOR | | | |

August 1, 2011

**VIA ECF and HAND DELIVERY**

The Honorable Joseph A. Dickson, U.S.M.J.
United States District Court
Martin Luther King, Jr. Federal Building & Courthouse
50 Walnut Street
Newark, New Jersey 07101

> Re:   *In re Schering-Plough Corporation ENHANCE Securities Litigation,*
>        **Civil Action No. 08-397 (DMC) (JD)**
>
>        *In re Merck & Co., Inc. Vytorin/Zetia Securities Litigation,*
>        **Civil Action No. 08-2177 (DMC) (JD)**

Dear Judge Dickson:

We represent Lead Plaintiffs in the above-captioned actions and write to respond to the July 15, 2011 letter submitted by Defendants seeking to compel the work product protected underlying investigative reports and memoranda (the "Investigative Memoranda") relating to the Confidential Witnesses ("CWs") cited in the Merck and Schering-Plough securities complaints.[1]

## PRELIMINARY STATEMENT

Defendants' request for production of what they concede to be work product protected Investigative Memoranda should be denied. Defendants' submission fails to articulate any basis in fact or law as to why they are entitled to obtain the Investigative Memoranda, which are "core" or "opinion" work product. *See Upjohn Co. v. United States*, 449 U.S. 383, 401 (1981); *In re Grand Jury Investigation*, 599 F.2d 1224, 1231 (3d Cir. 1979). The Investigative Memoranda reveal the thoughts, mental impressions, and strategies of Lead Plaintiffs' counsel by exposing, at a minimum, what questions and answers of witnesses were deemed important to the attorneys in this case. Defendants must establish that they have a substantial need for the work product protected information they seek, and that it is unavailable from any other source

---

[1] Citations to the Defendants' July 15 Letter brief are made herein as "Def. Ltr. __."

The Honorable Joseph A. Dickson, U.S.M.J.
August 1, 2011
Page 2

without undue hardship.  Fed. R. Civ. P. 26(b)(3).  Because it is "core" work product, moreover, obtaining such discovery requires a "heightened showing of extraordinary circumstances" to obtain disclosure,[2] which is met "only in 'a rare situation.'"  *In re Grand Jury*, 599 F. 2d at 1231 (quoting *Hickman v. Taylor*, 329 U.S. 495, 513 (1947)).

Defendants fail to meet this heavy burden because their purported "need" for the Investigative Memoranda is non-existent.  The Investigative Memoranda are wholly irrelevant to any matter pending before the Court or at issue in this litigation.  The Investigative Memoranda have no bearing on the Merck Lead Plaintiffs' motion for leave to file an amended complaint, which has been fully briefed and submitted to Judge Cavanaugh, and Lead Plaintiffs have already stipulated that no CW (besides Dr. M. Gene Bond ("Bond"), who is CW 5 in the Merck case and CW 2 in Schering) will be called to testify at trial.  *See* Def. Ltr. at Ex. 33, ¶ 2.[3]  Defendants, in fact, have conceded they have no "need" for CW-related information because they have already agreed to "forego taking the depositions" of these witnesses, despite having had the opportunity to do so.  *Id.* at ¶ 2.

According to Defendants' conclusory argument here, they have a "substantial need for access to the communications on which Plaintiffs' specifically rely to support the allegations in their Complaints."  Def. Ltr. at 8.  Defendants' argument is misguided and wrong.  Lead Plaintiffs do not intend to introduce into evidence the Investigative Memoranda to support the allegations in their Complaints, and nothing in the Investigative Memoranda was disclosed or used in connection with the few depositions taken of CWs in this case.  If Defendants want to know what the CWs in this action have to say, they could have, and should have, deposed them, but for most CWs, Defendants simply chose to forego the deposition process.  Defendants' lack of diligence cannot somehow form the basis for their motion to broadly compel work product and extend the discovery period.  Accordingly, Defendants have shown no cause, let alone the good cause, substantial need, and undue hardship necessary for the Court to compel production of Investigative Memoranda relating to all CWs.  Their motion should be denied on this basis.

Defendants' arguments to compel the Investigative Memoranda are specious for a number of other reasons.

---

[2]  *See, e.g., Graco, Inc. v. PMC Global, Inc.*, 2011 U.S. Dist. LEXIS 14717, at *31 (D.N.J. Feb. 14, 2011) ("'[C]ore' or 'opinion' work product … is 'generally afforded near absolute protection from discovery' and requires a heightened showing of extraordinary circumstances.") (quoting *In re Cendant Corp. Sec. Litig.*, 342 F.3d 658, 663 (3d Cir. 2003) (additional citations omitted)); *accord FTC v. Hope Now Modifications, LLC*, 2011 U.S. Dist. LEXIS 71921, at *12 (D.N.J. July 5, 2011) (citing *In re Sealed Case*, 856 F.2d 268, 273 (D.C. Cir. 1988)).

[3]  Bond has already been deposed and cross-examined regarding the statements attributed to him in the complaints.

CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY & AGNELLO
A PROFESSIONAL CORPORATION

The Honorable Joseph A. Dickson, U.S.M.J.
August 1, 2011
Page 3

First, Defendants' attempt to compel *all* of the Investigative Memoranda in this case pursuant to an "in issue" exception suffers from another fundamental (and fatal) flaw. There are a total of thirteen (13) CWs referenced in the Merck and Schering complaints; Defendants raise issues about *only four*. Of those four, Defendants focus most extensively on CW 1 (Nancy Behrens) who was *removed entirely from the Merck securities complaint* with the submission of the First Amended Consolidated Complaint for Violation of the Federal Securities Laws (hereafter, the "Amended Complaint") on June 3, 2011 (Dkt. No. 150-1), and who does not appear at all in the Schering complaint. CW 1, therefore, and any Investigative Memoranda relating to her, are wholly irrelevant. In addition, the only allegations raised by Defendants that Lead Plaintiffs put work product "in issue" *relate to CW 1*. *See* Def. Ltr. 7-8. Accordingly, even if the Court were to determine that Lead Plaintiffs put work product "in issue" with respect to CW 1 (which it should not), there is no basis to compel *all* Investigative Memoranda relating to the 12 other CWs.

Second, Defendants' selective slicing of the CW testimony and documents in their letter brief is misleading at best. Although none of this testimony is relevant to any matter being litigated or to be litigated in this case, Lead Plaintiffs are compelled to rebut it. As explained more fully below, CW 1 was never deposed, and so Defendants' argument that CW 1 is "recanting" is untested and supported by nothing but hearsay and speculation. CW 1 never provided *any* specific details showing that she was disavowing factual statements attributed to her in the Complaint, and Lead Plaintiffs continue to believe that the factual statements are accurate despite deleting them (as unnecessary) from the Amended Complaint.

CW 3 (Joseph Amaru) was deposed, and he corroborated almost every single statement attributed to him in the complaint despite the passage of almost three years between his investigative interview and deposition testimony. The one immaterial divergence of his testimony from the statements attributed to him in the original Merck complaint was corrected in the Merck Amended Complaint. Thus, again, CW 3 is irrelevant. The remaining two CWs mentioned by Defendants – CW 5 (Bond) and CW 8 (Raymond Skelly) – are similarly corrupted by Defendants' liberal use of out-of-context quotations that cut off material parts of testimony corroborating the accuracy of the statements attributed to these CWs. Because Defendants have no real basis to question the veracity of the statements attributed to the already-deposed witnesses, and because they have no need or use for such information in this litigation, the Court should not lend its support to Defendants' fishing expedition into Lead Plaintiffs' core work product after the close of discovery.

## FACTUAL BACKGROUND

As part of their document requests to Lead Plaintiffs on April 12, 2010, Defendants' requested the Interview Memoranda. Lead Plaintiffs' objected based upon work product protections, and after several meet and confer sessions which culminated in a letter from Lead Plaintiffs to Defendants on November 24, 2010, the Defendants dropped their demand. Defendants, however, continued to seek the identities of the CWs, which at the time Lead Plaintiffs protected based on numerous authorities allowing CWs to remain anonymous pursuant

The Honorable Joseph A. Dickson, U.S.M.J.
August 1, 2011
Page 4

to the work product doctrine,[4] and the genuine concern expressed by many CWs for their job security if their names were disclosed to Merck. Lead Plaintiffs ultimately disclosed the names of six CWs to Defendants on August 11, 2010 (Schering case) and August 16, 2010 (Merck case), because those CWs did not express a desire or need to remain anonymous. *See* Ex. C, hereto. The remaining CWs requested confidentiality or did not respond quickly enough in advance of Lead Plaintiffs' August letter to Defendants. On March 3, 2011, Lead Plaintiffs produced the names of the remaining CWs. Ex. D, hereto.

Beginning in mid-April 2011, Defendants began to subpoena documents from the CWs. In response, the CWs produced documents which included several emails, facsimiles, and letters reflecting communications with Lead Plaintiffs' counsel. The communications between the CWs and Lead Plaintiffs' counsel that were produced did not relate to the Investigative Memoranda, but to affidavits that several CWs expressed interest in executing in order to improve their chances of remaining anonymous from Merck. None of the CWs were provided copies or excerpts of the Investigative Memoranda. Subsequent to their subpoenas on the CWs, Defendants requested documents from Lead Plaintiffs' counsel relating to communications with CWs. Lead Plaintiffs provided Defendants with the documents they requested, with the exception of the Investigative Memoranda, which at the time was believed to be a dead issue that had been abandoned since November 2010.

Defendants subpoenaed and deposed three (3) CWs in the month of June. Three other CWs were scheduled to be deposed before the fact discovery cutoff of August 1, 2011, but Defendants took each of them off-calendar and did not reschedule despite Lead Plaintiffs' willingness to proceed.

All of the CWs deposed to date have testified specifically that they were fully apprised that the purpose of the interview was for use in litigation, and that the investigator was acting on behalf of "plaintiffs" in this litigation. *See* Dkt. No. 160 (Lead Plaintiffs' Reply to Defendants' Limited Opposition to Motion for Leave to File the First Amended Consolidated Complaint for Violations of the Federal Securities Laws) (hereafter, "Lead Plaintiffs' Reply Brief") at 4; *see also* Dkt. No. 160-1 (Declaration of Jeff Almeida in support of Lead Plaintiffs' Reply to Defendants' Limited Opposition to Motion for Leave to File the First Amended Consolidated

---

[4] *See, e.g., In re Veeco Instruments, Inc. Sec. Litig.*, No. 05 MD 0169, 2007 WL 274800, at *1 (S.D.N.Y. Jan. 29, 2007) ("Defendants essentially seek the identity of witnesses interviewed by counsel for the Lead Plaintiffs and relied upon in the preparation of the complaint. Such information would demonstrate which witnesses that Lead Plaintiff deems important and is protected from disclosure by the work-product privilege."). *Accord In re SLM Corp. Sec. Litig.*, No. 08 Civ. 1029, 2011 WL 611854 at *1 (S.D.N.Y., Feb. 15, 2011); *In re Initial Public Offering Sec. Litig.*, 220 F.R.D. 30 (S.D.N.Y. 2003); *In re St. Paul Travelers Sec. Litig. II*, No. 04-4697, 2007 WL 1424673, at *1 (D. Minn. May 10, 2007); *In re MTI Tech. Corp. Sec. Litig.,* Case No. SACV 00-0745, 2002 WL 323443347 at *2-5 (C.D.Cal. June 13, 2002); *In re Ashworth, Inc., Sec. Litig.*, 213 F.R.D. 385, 389 (S.D. Cal 2002), *Electronic Data Sys. Corp. v. Steingraber*, Case No. 4:02 CV 225, 2003 WL 21652405 at *2 (E.D.Tex. July 9, 2003).

The Honorable Joseph A. Dickson, U.S.M.J.
August 1, 2011
Page 5

Complaint for Violations of the Federal Securities Laws) (hereafter, "Almeida Decl.") at Exs. A and B.[5]  In addition, as set forth in Lead Plaintiffs' Reply Brief and the Almeida Decl., there is either no evidence, or sparse and unsupported evidence, that CWs 1, 3, or 5 are "recanting" or expressing disagreement with statements attributed to them in the Merck or Schering complaints.  *See* Lead Plaintiffs' Reply Brief at 4-9; Almeida Decl. at ¶¶ 2-21.  Indeed, with respect to all of the CWs who Defendants deposed, the testimony substantially confirmed the truth of allegations attributed to them in the original complaints.  *Id.*[6]

In addition, CW 8 (Raymond Skelly), who was deposed after Defendants filed their "limited opposition" to Lead Plaintiffs' motion for leave, also substantially corroborated the facts attributed to him in the Merck Amended Complaint (which are unchanged from the original Complaint).  The only statements attributed to CW 8 in the Merck Amended Complaint are the as follows: "Confidential Witness #8 ('CW 8'), a Merck research director through August 2008, said s/he was shocked when s/he learned that Merck had had results of the ENHANCE study for almost two years before publication and stated s/he did not know why there was no steering committee for the study."  *See* Dkt. No. 150-1 (Amended Complaint) at ¶ 165.  At his deposition, CW 8 testified that in February 2007 he was "Associate director of research information services" at Merck, corroborating the Lead Plaintiffs shorthand of "research director" which was utilized to preserve CW 8 anonymity.  Ex. F (Skelly Dep. Tr. at 15-16).  He further confirmed that he freely spoke to Lead Plaintiffs' investigators knowing they were representing plaintiffs in this litigation.  *Id.* at 27-28; 33-34.  CW 8 recalled that he spoke in the initial interview about the ENHANCE study not having a steering committee, which CW 8 termed a "review board," and testified that he "would be shocked, you know, to learn Merck did a study without a review board."  *Id.* at 36-38.  When asked if the statements in the Complaint attributed to him were accurately quoted, Skelly testified: "I'm not sure.  You know, I know there was something about a review board and I know that, you know, yeah, as I say now, I'd be shocked to learn that there was no review board for this study, or any Merck study."  *Id.* at 44-45; *see also id.* at 61.  Later in his testimony, Skelly also confirmed that "I would be shocked" to learn that Merck had had results of the ENHANCE study for almost two years (*id.* at 65), and that if asked by the investigator years before why there was no steering committee in ENHANCE, he "[p]robably" would have told the investigator he didn't know.  *Id.* at 87-88.[7]

---

[5]   Complete and unredacted/unsealed copies of Lead Plaintiffs' Reply Brief and the Almeida Decl. are submitted herewith *in camera* as Exs. A and B.  These submissions provide a full history of the CW issues if the Court is interested in reviewing that further.

[6]   Notably, one of the few CWs that Defendants *did* depose (CW 7 in the Merck case, and CW 6 in Schering) goes completely unmentioned in their submission to this Court.  That is because this CW (Barry Scarbrough) so thoroughly confirmed everything attributed to him that even Defendants could not contort the record to suggest otherwise.  *See* Ex. E, hereto (Scarbrough Dep. Tr. at 11-71).

[7]   The only actual inaccuracy that CW 8 found with the complaint relates to his departure date from Merck, which is inadvertently inaccurate, but not material.  *Id.* at 22-23.

The Honorable Joseph A. Dickson, U.S.M.J.
August 1, 2011
Page 6

## ARGUMENT

### A. Defendants Have No Need, Let Alone A Substantial One, For The Core Work Product Protected Information They Seek To Compel

Under Fed. R. Civ. P. 26(b)(3), attorney work product is only discoverable if the party seeking the disclosure demonstrates "substantial need of the materials . . . and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Fed R. Civ. P. 26(b)(3). Here, Defendants concede, as they must, that the Investigative Memoranda are work product. *See* Def. Ltr. at 8-9. But Defendants fail entirely to demonstrate how they have exhausted every avenue to get the information they seek and would suffer an undue hardship in attempting to do so. Defendants cannot make such a showing because they had the opportunity to depose all of these CWs, and chose not to. Indeed, Defendants' sole basis to support their "argument" that they have a substantial need for the Investigative Memoranda here is the decision in *George v. Siemens Indus. Automation, Inc.*, 182 F.R.D. 134 (D.N.J. 1998), which is inapposite, yet instructive on why Defendants' motion to compel must fail.

First, *George* involved a case where the relevant fact witness with an arguably work product protected interview memorandum *already had been deposed*. *See id*. at 142. All courts, including *George*, require at a minimum that depositions be taken before ordering disclosure of work product. *See id*. at 141 ("[c]ourts require a party seeking to overcome the work product protection to show that they failed at all attempts to discover the material through alternative sources.") (citing *Martin v. Bally's Park Place Hotel & Casino*, 983 F.2d 1252, 1255 (3d Cir. 1992); *In re Grand Jury*, 633 F.2d 282, 290 (3d Cir. 1980)); *see also Hope Now Modifications, LLC*, 2011 U.S. Dist. LEXIS 71921 at *13-14 (citing *Frieman v. USAir Group, Inc.*, Civ. A. No. 93-3142, 1994 U.S. Dist. LEXIS 16994, 1994 WL 675221, at *1 (E.D. Pa. Nov. 23, 1994) ("A party can obtain the substantial equivalent of investigatory notes with interrogatories that elicit information about the investigation or by deposing witnesses interviewed by an investigator."); *In re Veeco Instruments. Inc. Sec. Litig.*, 2007 WL 724555, at *11 (no substantial need shown where witnesses interviewed were available for deposition); *Sec. & Exch. Comm'n v. Treadway*, 229 F.R.D. 454, 456 (S.D.N.Y. 2005) (no substantial need for attorney interview notes where information could be obtained from depositions); *Xerox v. I.B.M. Corp.*, 64 F.R.D. 367, 382 (S.D.N.Y. 1974) (party required to depose witness to show inability to obtain substantial equivalent of information sought prior to obtaining work product).

Second, Judge Chesler's finding of work product waiver in *George* also hinged on the fact that the work product protected information at issue went to one of the seminal issues in the case – *i.e.*, the state of mind of plaintiff in a case alleging, among other things, sex discrimination and negligent and intentional infliction of emotional distress. *George,* 182 F.R.D. at 137, 142. Judge Chesler found in *George* that the case for disclosure based on need was "so compelling" that non-disclosure would create a risk of a "fraud" being perpetrated on the Court. *Id.* at 142-43. Here, quite to the contrary, the Investigative Memoranda have no bearing on any issue being litigated in this case. Indeed, Plaintiffs are not intending to call any of the CWs at trial (other than Bond), and if the CWs were so important to a seminal issue in this case, then Defendants

The Honorable Joseph A. Dickson, U.S.M.J.
August 1, 2011
Page 7

would not have failed schedule or depose nine (9) of them until after discovery was over.[8] Accordingly, Defendants have utterly failed to carry their high burden here, and the motion should be denied. *See also Bowman v. Am. Homecare Supply, LLC*, 2009 U.S. Dist. LEXIS 54195, at *6 (D.N.J. June 5, 2009) ("The party challenging the privilege has the burden of proving that a waiver of the privilege occurred").

### B. No Work Product From The Investigative Memoranda Was Disclosed In Any Manner By Lead Plaintiffs

Defendants' argument that Lead Plaintiffs disclosed or put "in issue" work product from the Investigative Memoranda also must fail. Defendants loosely articulate three ways in which Lead Plaintiffs' put the Investigative Memoranda "in issue," none of which has merit.

First, Defendants state that Lead Plaintiffs put the Investigative Memoranda at issue "in response to charges by CWs that they were contacted under false pretenses." Def. Ltr. at 8. This is simply not true. Even a casual review of the citations that Defendants offer in support shows that Lead Plaintiffs relied *exclusively* on the deposition testimony of *all four CWs that were deposed*, each of whom confirmed that there were no "false pretenses" to Lead Plaintiffs' investigative fact gathering. There was no discussion whatsoever at these depositions about any Investigative Memoranda.[9]

Second, Defendants state that Lead Plaintiffs put their Investigative Memoranda at issue by "insisting that the CW statements in the Complaint were consistent with their investigative report." *Id.* at 8 & Ex. 20. Again, Defendants are wrong, and this never happened. Defendants' Ex. 20 is an email that was disclosed to Defendants by CW 1 (Behrens) pursuant to Defendants' subpoena. Lead Plaintiffs' did not affirmatively inject this email into the fray or place it "at issue"; rather, Defendants did. Lead Plaintiffs re-produced it only after Defendants had already received Ex. 20 from Ms. Behrens more than a month earlier.[10] And, again, no work product

---

[8] Further in this regard, Lead Plaintiffs take exception with Defendants' characterization of the Stipulation that was executed by the parties on July 14, 2011, in which they state Lead Plaintiffs' "agreed not to object to certain CW discovery occurring after August 1[, 2011]." (the discovery deadline). *See* Def. Ltr. at 8. To the contrary, Lead Plaintiffs agreed to allow a single deposition of one CW, nothing more. All other CW depositions will be opposed under ¶ 2 of the Stipulation as barred by the discovery cut-off.

[9] Defendants' theory about "false pretenses" in the initial interviews stems from a document that was produced by CW 1 (Nancy Behrens) in response to Defendants' subpoena, wherein Ms. Behrens makes an ambiguous reference to a "market survey" in an email. *See* Def. Ltr. at Ex. 22. Defendants' attempt to hinge their argument on this untested hearsay should be rejected because each and every CW that did testify knew it was not a market survey.

[10] Unlike waiver of attorney client privilege, to impliedly waive work product protection, the purported disclosures *must* be to an adversary. *See In re Chevron*, 633 F.3d 153, 165 (3d Cir. 2011) ("the purpose behind the work-product doctrine requires a court to distinguish between

The Honorable Joseph A. Dickson, U.S.M.J.
August 1, 2011
Page 8

from the Investigative Memoranda was disclosed, nor did Lead Plaintiffs affirmatively argue in their briefing (contrary to what Defendants state) that the statements attributed to CW 1 in the Complaint are consistent with the Investigative Memoranda. *See* Ex. A at 4-6.

  <u>Third</u>, Defendants incorrectly state that in both Lead Plaintiffs' Reply Brief and the Almeida Decl. Lead Plaintiffs touted their "thorough investigation" and "offered a selected history of their communications with the CWs, in order to bolster their version of events." *Id.* at 7-8 & Ex. 27 at 4-9. Defendants further state that in "advancing their side of the story, Plaintiffs produced their counsel's communications with the CWs, and defended the conduct of counsel and their investigators based on the investigative report." *Id.* Here, Defendants get some facts right, and misstate others, but completely miss on the law of implied waiver as it applies here. Lead Plaintiffs did state, as background in both their brief and declaration, that as part of their initial investigation of Defendants' fraud, they conducted "a thorough investigation," which included CW interviews. This is not work product; indeed, Lead Plaintiffs are required to make that exact same statement (among others) to justify attorney work product protection in the first place. Defendants are also right that Lead Plaintiffs gave a brief recitation of communications with CW 1, but this was only related to more recent telephone and email communications with CW 1, not the communications relating to the Investigation Memoranda. These more recent communications occurred more than 2 years *after* the Investigative Memoranda were prepared and related only to a draft affidavit that CW 1 requested in an effort to protect her confidentiality from Merck. Again, these communications are not protected work product and all such communications were only tangentially (at best) related to the Investigative Memoranda. *Hope Now Modifications, LLC*, 2011 U.S. Dist. LEXIS 71921, at *13-14 (finding that production of the email between counsel and the witness had no bearing on the work product protections afforded the investigative reports). Finally, Defendants baldly misstate that Lead Plaintiffs' disclosed communications between Lead Plaintiffs' counsel and CWs to "advance [our] side of the story." Def. Ltr. at 8. This is inaccurate. It was Defendants who demanded this information be produced, and it was Defendants who "advanced it." Lead Plaintiffs never used these materials to defend their conduct.

  On these facts, an implied waiver did not occur under any of the three theories set forth by Defendants. This Court would have to take an unwarranted and impermissibly expansive view of what constitutes work product and what constitutes implied waiver for any of Defendants' arguments to succeed. *Teleglobe Communs. Corp. v. BCE, Inc. (In re Teleglobe Communs. Corp.)*, 493 F.3d 345, 378 (3d Cir. 2007) ("In discovery disputes, implied waivers are construed narrowly") (citation omitted).

---

disclosures to adversaries and disclosures to non-adversaries, and it is only in cases in which the material is disclosed in a manner inconsistent with keeping it from an adversary that the work-product doctrine is waived.") (citation and quotations omitted); *see also D & D Assocs., Inc. v. Bd. of Ed. of N. Plainfield*, 2011 U.S. Dist. LEXIS 51853, *29-30 (D.N.J. May 13, 2011) (citations omitted).

The Honorable Joseph A. Dickson, U.S.M.J.
August 1, 2011
Page 9

### C. Even If Defendants Established Implied Waiver (Which They Have Not) Such Waiver Must Limited To CW 1 Only

Finally, Defendants do not, and cannot, articulate a persuasive argument for compelling the production of *all* of the Investigative Memoranda.  When implied waiver operates under the "in issue" doctrine, the waiver of work product protection is focused on fairness, and Courts narrowly tailor any such waiver to address and remedy the precise matter put "in issue" by the party asserting the protection.  *Teleglobe Communs. Corp.*, 493 F.3d at 378.  Here, it is not even clear on what theory Defendants hope to compel *all* Investigative Memoranda relating to the thirteen CWs (not all of whom were cited in the two different complaints filed in the Merck and Schering-Plough securities actions), because they only provide an argument that the Investigative Memoranda of CW 1 in the Merck action was put "in issue."  The Court should therefore deny Defendants' motion to compel in its entirety, but if it finds that any waiver occurred it should, at most, narrowly tailor that waiver to CW 1.

If the Court has any questions or would like to discuss this matter further with the parties, Lead Plaintiffs are available at your convenience.

Very truly yours,

CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.

/s/ James E. Cecchi

JAMES E. CECCHI

cc:     All Counsel (via ECF)