# TOMPKINS, McGUIRE, WACHENFELD & BARRY, LLP

### *Counselors at Law*

FOUR GATEWAY CENTER
100 MULBERRY STREET
NEWARK, NEW JERSEY 07102-4056
Newark (973) 622-3000
New York (212) 714-1720
Fax (973) 623-7780
www.tompkinsmcguire.com

**William B. McGuire**
*Managing Partner*

Tel: (973) 623-7750
E-Fax: (973) 623-7744
wmcguire@tompkinsmcguire.com

August 16, 2011

**VIA ECF**

The Honorable Joseph A. Dickson, U.S.M.J.
United States District Court
M.L. King, Jr. Federal Building & Courthouse
50 Walnut Street
Newark, New Jersey 07101

> *In re Merck & Co., Inc. Vytorin/Zetia Securities Litigation*
> Civil Action No. 08-2177 (DMC) (JAD)
>
> *In re Schering-Plough Corporation/ENHANCE Securities Litigation*
> Civil Action No. 08-397 (DMC) (JAD)

Dear Judge Dickson:

We represent Merck & Co., Inc. ("Merck"), Schering-Plough Corporation ("Schering") and certain related defendants in the above-captioned cases. We respectfully submit this letter (a) in further support of defendants' limited opposition to plaintiffs' motion to amend the Merck Complaint, (b) to respond to plaintiffs' August 1 letter, which argued that plaintiffs' investigative documents relating to conversations with confidential witnesses ("CWs") cited in the Merck and Schering Complaints are immune from discovery under the "work product" doctrine, and (c) to bring to the Court's attention a new decision sanctioning one of the plaintiffs' law firms in the Schering case for overstating the position a CW held in the company being sued.

## A. Defendants' Limited Objection To Motion To Amend Should Be Granted

As an initial matter, plaintiffs are wrong when they continue to claim that the CWs expressed no "disagreement with statements attributed to them in the Merck or Schering complaints." (Plaintiffs' Letter to the Honorable Joseph A. Dickson, dated August 1, 2011 ("Pl. Ltr."), at 5.) As demonstrated in the letter and exhibits we submitted on July 15, 2011, the CWs repeatedly disputed statements attributed to them in the Complaints. Among other things, the CWs said the following, either in emails to plaintiffs' counsel or at their depositions:

**TOMPKINS, McGUIRE, WACHENFELD & BARRY**

2

- "The fac[t] that you had my position, and termination date at Merck incorrect causes me great concern as to what other inaccuracy [sic] are being used." (Exhibit 15 to Defendants' July 15, 2011 Letter to the Honorable Joseph A. Dickson ("Ex.") at 1.)

- "Statement 503 is incorrect" (Ex. 16 at 1); "well, Investigator got their facts confused. . . . statement 503 is incorrect." (Ex. 17 at 1.)

- "I specifically and repeatedly did not, and do not, agree with the comments being attributed to me." (Ex. 22 at 1.)

- "I was flabbergasted that my words were somehow distorted to this extent. And to the point where I said, I'm not going to cooperate with you because you're making incorrect – you're saying things that are wrong that I did not say." (Ex. 23 at 78.)

- "The word forced is bothersome in my mind. I don't believe I used it and that was not my, my sense in that discussion." (Ex. 24 at 132.)

- Plaintiffs' complaint "contains half-truths and some false statements." (Ex. 25 at 63-65.)

Based upon the number and intensity of disavowals from the CWs, defendants objected to plaintiffs' motion to amend their Complaint to the extent the proposed amended pleading continues to contain statements attributed to CWs that the CWs do not stand behind. In response, plaintiffs advised the Court that "Lead Plaintiffs have already stipulated that no CW (besides Dr. M. Gene Bond ('Bond'), who is CW 5 in the Merck case and CW 2 in Schering) will be called to testify at trial. *See* Def. Ltr. at Ex. 33, ¶ 2." (Pl. Ltr. at 2.)

This fatally undermines plaintiffs' position on the motion to amend. Plaintiffs' statement that they will not call 12 of 13 CWs at trial makes it a certainty that plaintiffs will not be able to establish their allegations regarding the CWs' purported statements in either the Merck or Schering Complaint. This also provides further reason why the CW statements must be removed from plaintiffs' Complaints.[1]

---

[1]   Plaintiffs also are incorrect when they claim that defendants agreed to "forego taking the depositions" of the CWs who have not yet been deposed. (Pl. Ltr. at 2.) Rather, having deposed four CWs who were cited for substantive propositions, defendants: (1) agreed not to depose six CWs (and plaintiffs agreed not to call them at trial) who were cited for unremarkable propositions, such as that Vytorin lowers "LDL" cholesterol or that unspecified persons visited the "Café Pharma" website (08-CV-2177, Docket Entry 24, ¶¶ 151-152, 312-313; 08-CV-397, Docket Entry 52, ¶¶ 117, 213); (2) deferred the deposition of one CW who is cited for a substantive proposition until after this Court rules on the current application, so as to avoid inconveniencing a third-party witness with multiple depositions; and (3) reserved the right to depose the remaining two substantive witnesses or revisit taking the deposition of any CW in the event that information in plaintiffs' investigative materials provides grounds to take such a step. (Ex. 33.)

## TOMPKINS, McGUIRE, WACHENFELD & BARRY

3

**B.** **Plaintiffs' Objection To Producing The Investigative File Should Be Rejected**

Plaintiffs contend that defendants lack "substantial need" for documents reflecting their investigators' conversations with the CWs by arguing that those documents are "wholly irrelevant to any matter pending before the Court or at issue in this litigation." (Pl. Ltr. at 2.) This too is incorrect. The investigative materials are not only highly relevant, but are the *only* basis plaintiffs claim for including, and retaining, statements in the Complaints that the CWs have disputed. It would be grossly unfair if plaintiffs were permitted to defend the use of CW statements based upon their investigative record and then refuse to provide that record when the statements are challenged. Even if the CW statements were excluded from plaintiffs' pleadings (as they must be), the investigative materials remain relevant to whether plaintiffs had a good faith basis for including them in their pleadings in the first place.

Moreover, the "substantial need" cases plaintiffs cite do not support their argument that all CWs must be deposed as a precondition for seeking investigator notes and interview memoranda. (Pl. Ltr. at 6.) In the cases plaintiffs cite, the information sought could have been obtained by deposing witnesses. Here, in contrast, where the CWs have disowned the statements plaintiffs attribute to them, and where plaintiffs have justified their decision to retain those statements by reference to a report memorializing their investigators' conversations with CWs, there is only one source available to test whether plaintiffs ever had a basis to include the CW allegations in their complaints – and that is discovery of plaintiffs' investigative reports.[2]

Plaintiffs also are wrong when they argue that the standard for obtaining their investigative record is the heightened standard applicable to "core" or "opinion" work product. (Pl. Ltr. at 1.) In this case, plaintiffs do not claim – let alone demonstrate – that the memoranda they are withholding contain the legal theories or mental impressions of any attorney. To the extent the interview memoranda are factual summaries by investigators reported to an attorney, those summaries do not have the status of "core" or "opinion" work product. *See Crosby* v. *City of New York,* 269 F.R.D. 267, 279 (S.D.N.Y. 2010) (portions of investigator memoranda containing factual summaries and witness statements, without "explicit mental impressions, conclusions, opinions or legal theories of the attorney," not core work product); *Kane* v. *Manufacturers Life Ins. Co.,* No. 08-4581, 2010 WL 2178837 at *9-10 (D.N.J. May 26, 2010) (affidavit prepared by attorney on behalf of witness not core work product merely because attorney selected the facts

---

[2]   Plaintiffs incorrectly argue that "[a]ll courts, including *George* [v. *Siemens Indus. Automation, Inc.,* 182 F.R.D. 134 (D.N.J. 1998)], require at a minimum that depositions be taken before ordering disclosure of work product." (Pl. Ltr. at 6.) In *George,* the relevant memorandum summarized a conversation between the witness and plaintiff's counsel that occurred after the deposition – making that deposition irrelevant to the analysis. Instead, the key consideration in *George,* as here, is that defendants had no alternative means of discovering the facts in the attorney summary. That is why Judge Chesler ordered disclosure of the attorney summary at issue in *George. Id.* at 143.

## TOMPKINS, McGUIRE, WACHENFELD & BARRY

4

presented); *Ford Motor Co.* v. *Edgewood Props., Inc.*, 257 F.R.D. 418, 421-23 (D.N.J. 2009) (same).[3]

Finally, plaintiffs are wrong when they argue that they have not put their investigative materials "at issue" in this case. Defendant's July 15 letter explained that plaintiffs defended their use of CW statements by filing a declaration with the Court that touted plaintiffs' "thorough investigation" and retention of "investigators to seek out former employees and witnesses who might be willing to provide relevant knowledge." (Ex. 28, ¶ 2.) Plaintiffs claim they prepared the Complaints based upon an "investigative report" memorializing the CWs' contemporaneous interview statements. (Exs. 20, 17.) This is more than sufficient to place the entire investigative record at issue and waive any claim of work product protection. *See In re Human Tissue Prods. Liab. Litig.*, 255 F.R.D. 151, 161 (D.N.J. 2008) (at issue waiver applies even where attorney "implicitly" relies on the "fruits of [its] background investigation"); *accord In re Neurontin Antitrust Litig.*, 2011 WL 253434, at *17 (D.N.J. Jan. 25, 2011); *Ford Motor Co.* v. *Edgewood Props., Inc.*, 2010 WL 2516461, at *4 (D.N.J. Jun. 14, 2010).

## C.   Plaintiffs' Counsel Sanctioned For Overstating The Position Of A CW

We also write to bring to the Court's attention the recent *BankAtlantic* decision, in which plaintiffs' counsel (including one of plaintiffs' law firms in the Schering case) was sanctioned for overstating the position a CW held with the defendant. *See In re BankAtlantic Bancorp, Inc. Sec. Litig.*, No. 07-CV-61542 (S.D. Fla. Aug. 3, 2011) (slip opinion annexed as Exhibit A). In the *BankAtlantic* case, plaintiff alleged that a CW had worked in defendant's credit department (where the events at issue took place) when, in fact, the CW had moved to defendant's small business division, which was "unrelated to the facts and claims at issue" in the lawsuit. (Ex. A at 22-23.) Even though plaintiffs produced transcripts of their interviews with the CW that "largely substantiate[d] the assertions attributed" to this CW, the court sanctioned plaintiffs' counsel – finding that the statements attributed to the CW lacked evidentiary support "insofar as her proximity to the offending conduct may have been more distant than was represented." (*Id.*)

Plaintiffs' conduct at issue here is even more egregious than the conduct that drew sanctions in the *BankAtlantic* case. For example, as explained in our opposition to the motion to amend, CW 8 testified that he worked as an information technology specialist in Merck's research information services group and had no first-hand knowledge of, and paid no attention to, Vytorin or the ENHANCE trial. (Ex. 25, at 22, 94-97.) Plaintiffs' Complaints, however, inflated CW 8's role by falsely assigning him the title of "Merck research director" and falsely alleging that he worked at Merck "through August 2008,"

---

[3] Even if the withheld memoranda could be considered core work product – and they cannot – defendants may still obtain interview memoranda based upon their showing of substantial need. *See In re Grand Jury*, 599 F.2d 1224, 1231-32 (3d Cir. 1979) (protection for interview memoranda can be overcome by showing "sufficient necessity or good cause'" in particular cases); *see also Hickman* v. *Taylor*, 329 U.S. 495, 511 (1947) (applying work product protection where there was no showing of substantial need, but recognizing "impeachment or corroboration" as indicia of need).

## TOMPKINS, McGUIRE, WACHENFELD & BARRY

5

when CW 8 left Merck in February 2007 – long before many of the key events in the ENHANCE trial had occurred. (Ex. 25, at 22-25, 65-67, 71.) Even though CW 8 had no exposure to the events at issue in this lawsuit, plaintiffs' investigators contacted him in 2008, accused Merck of delaying the ENHANCE results for two years, and then ascribed significance in their pleadings to an allegation that CW 8 was "shocked when s/he learned that Merck had had results of the ENHANCE study for almost two years before publication." (Docket Entry 24, ¶ 168; Docket Entry 150-1, ¶ 165.) As in *BankAltlantic*, plaintiffs' allegations regarding CW 8 are misleading because, among other things, his "proximity to the offending conduct" was "more distant than was represented."

*BankAtlantic* also is instructive regarding the conduct for which plaintiffs' counsel escaped sanctions. In response to five CWs who disputed statements attributed to them in the *BankAtlantic* complaint, plaintiffs' counsel submitted sworn affidavits of an investigator that appended "summary charts of investigator notes and memoranda from interviews with the confidential witnesses." (Ex. A at 16-17.) Plaintiffs' counsel averted sanctions in *BankAtlantic* because CW deposition testimony disavowing the allegations in the complaint was contradicted by "competing declarations" from plaintiffs' counsel and investigator – coupled with evidence from the underlying interview notes and memoranda. (Ex. A at 17-21.) By contrast, here, the Merck and Schering plaintiffs have refused to produce *any* "competing" interview notes, memoranda, or declarations from their investigators.

For these reasons, and those stated in defendants' prior submissions, we respectfully request that Your Honor require plaintiffs to (a) excise from their Complaints all references to the CWs and (b) produce all documents memorializing their communications with the CWs. We note that there is a telephonic conference scheduled in this matter for August 31, and we are otherwise available at the Court's convenience.

Respectfully submitted,

William B. McGuire

For    TOMPKINS, McGUIRE, WACHENFELD & BARRY

cc:  All Counsel (Via ECF)