UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE MERCK & CO., INC. VYTORIN/ ZETIA SECURITIES LITIGATION | Civil Action No. 08-2177 (DMC) (JAD) |

## LEAD PLAINTIFFS' MEMORANDUM OF LAW IN RESPONSE TO OBJECTIONS TO MOTION FOR AN AWARD OF ATTORNEYS' FEES

Jay W. Eisenhofer
Daniel L. Berger
John C. Kairis
**GRANT & EISENHOFER P.A.**
485 Lexington Ave.
New York, NY 10017
(646) 722-8500
*Lead Counsel for Lead Plaintiffs and the Class*

Max W. Berger
Salvatore J. Graziano
**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
1285 Avenue of the Americas
New York, NY 10019
(212) 554-1400
*Lead Counsel for Lead Plaintiffs and the Class*

James E. Cecchi
Lindsey H. Taylor
Donald A. Ecklund
**CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, New Jersey 07068
(973) 994-1700
*Co-Liaison Counsel for the Class*

## TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ................................................................................................ ii
PRELIMINARY STATEMENT ......................................................................................... 1
ARGUMENT ....................................................................................................................... 2
    A.    THE REACTION OF THE CLASS SUPPORTS APPROVAL OF THE FEE REQUEST AND UNDERCUTS THE OBJECTIONS ................................................. 2
    B.    THE ORLOFFS' OBJECTION IS MERITLESS ...................................................... 3
    C.    THE DEJULIUS OBJECTION IS WITHOUT MERIT ............................................ 5
    D.    COUNSEL FOR THE OBJECTORS ARE SERIAL OBJECTORS .............................. 9
CONCLUSION .................................................................................................................. 11

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*In re Adams Golf, Inc. Sec. Litig.*,
    381 F.3d 267 (3d Cir. 2004) ..........................................................................................................8

*In re AOL Time Warner ERISA Litig.*,
    N. 02-cv-8853 (SWK), 2007 WL 4225486 (S.D.N.Y. Nov. 28, 2007) ...................................10

*In re Aremissoft Corp. Sec. Litig.*, 210 F.R.D. 109 (D.N.J. 2002) ....................................................7

*Barnes v. FleetBoston Fin. Corp.*,
    No. 01-cv-10395-NG, 2006 WL 6916834 (D. Mass. Aug. 22, 2006) .....................................10

*In re Citigroup, Inc. Sec. Litig.*,
    No. 09-md-2070 (SHS), 2013 WL 3942951 (S.D.N.Y. Aug. 1, 2013) ................................ 3-4

*Dewey v. Volkswagen of Am.*,
    728 F. Supp. 2d 546 (D.N.J. 2010) .........................................................................................10

*Gunter v. Ridgewood Energy Corp.*,
    223 F.3d 190 (3d Cir. 2000) ................................................................................................1, 5

*In re Initial Pub. Offering Sec. Litig.*,
    721 F. Supp. 2d 210 (S.D.N.Y. 2010) .....................................................................................10

*In re Initial Pub. Offering Sec. Litig.*,
    728 F. Supp. 2d 289 (S.D.N.Y. 2010) .....................................................................................10

*In re Merck & Co., Inc., Vytorin ERISA Litig*,
    No. 08-cv-285, 2010 WL 547613 (D.N.J. Feb. 9, 2010) ................................................ passim

*O'Keefe v. Mercedes-Benz USA, LLC*,
    214 F.R.D. 266 (E.D. Pa. 2003) ..............................................................................................10

*In re Remeron Direct Purchaser Antitrust Litig.*, No. 03-cv-0085,
    2005 WL 3008808 (D.N.J. Nov. 9, 2005) ................................................................................7

*In re Rite Aid Corp. Sec. Litig.*,
    269 F. Supp. 2d 603 (E.D. Pa. 2003) ......................................................................................11

*In re Schering-Plough Corp. ENHANCE ERISA Litig.*,
    No. 08-cv-1432, 2012 WL 1964451 (D.N.J. May 31, 2012) .....................................................3

*In re Schering-Plough Corp. Sec. Litig.*,
    No. 01-cv-0829, 2009 WL 5218066 (D.N.J. Dec. 31, 2009) .....................................................3

*Shaw v. Toshiba Am. Info. Sys., Inc.*,
    91 F. Supp. 2d 942 (E.D. Tex. 2000)......................................................................................11

*In re Wal-Mart Wage & Hour Emp't Practices Litig.*,
    No. 06-cv-00225, 2010 WL 786513 (D. Nev. Mar. 8, 2010) ...................................................10

**STATUTES AND OTHER AUTHORITIES**

15 U.S.C. §77k..................................................................................................................................8

Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements And Their Fee
    Awards*, 7 J. OF EMPIRICAL LEGAL STUD. 811 (2010) ................................................................7

## PRELIMINARY STATEMENT

Pursuant to the Court's June 6, 2013 Order preliminarily approving the proposed Settlement ("Preliminary Approval Order"), from June 21, 2013 to August 12, 2013, the Settlement Notice was mailed to over 758,000 persons, and on July 2, 2013, the Summary Notice was published in the national edition of *The Wall Street Journal* and transmitted over the PR Newswire. *See* Supplemental Declaration of Stephanie A. Thurin ¶¶ 3-6 ("Thurin Supp. Decl.") submitted herewith. Additionally, a copy of the Settlement Notice was posted on the settlement website, www.merckvytorinsecuritieslitigation.com, as were the Complaint, Stipulation, Preliminary Approval Order, and Proof of Claim form. *Id.* at ¶7. The Settlement Notice informed potential Class Members of Lead Counsel's intention to move for an award of reasonable attorneys' fees, to be recommended by the Court-appointed Special Masters, not to exceed 28% of the Settlement Fund and reimbursement of expenses, and also informed Class Members of their right to object to the Settlement, the Plan of Allocation, or the request for attorneys' fees. The deadline to file objections was August 5, 2013.

The Class's response to the Settlement and fee request has been overwhelmingly favorable. Only two objections were filed, and those were limited to the attorneys' fee request: one on behalf of the Orloff Family Trust DTD 12/13/01 and Dr. Marshall J. Orloff IRA R/O (the "Orloffs") and one on behalf of Franklin DeJulius ("DeJulius"). These two objections represent a mere .000029% of the Settlement Notices mailed to Class Members, and the objections were filed by notorious serial objectors.

The Orloffs' objection fails to satisfy the requirements established by the Court in the Preliminary Approval Order and DeJulius' stake is *de minimis* – he purchased only two Merck shares during the Class Period. Moreover, the objections are nothing more than broad, unsupported criticisms without any analysis (or even mention) of the *Gunter* factors that must be

1

considered in evaluating a motion for an award of attorneys' fees in a common-fund settlement. The objectors demonstrate a failure to investigate or appreciate the significant risks confronting Lead Plaintiffs and assumed by Lead Counsel in prosecuting this complex litigation for five years. Additionally, the objections were filed by counsel who are serial objectors to class action settlements who raise baseless and generic objections to delay relief to the Class for no purpose other than their own personal agenda to extort a payment to go away.

As made clear in Lead Plaintiffs' moving brief ("Fee Brief"), given the huge risks in litigating this case and the excellent results achieved in this hard-fought litigation that spanned several years, an award of fees of up to 28% of the common fund is reasonable and well within the range of fees in similar contingency cases.[1] In short, the objections are meritless and should be rejected.

## ARGUMENT

**A. THE REACTION OF THE CLASS SUPPORTS APPROVAL OF THE FEE REQUEST AND UNDERCUTS THE OBJECTIONS**

In evaluating a fee request, among other factors, "the Court evaluates the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel." *In re Merck & Co., Inc., Vytorin ERISA Litig*, No. 08-cv-285, 2010 WL 547613, at *10 (D.N.J. Feb. 9, 2010). To date, there have been only two objections to the fee request, and none to the Settlement or the Plan of Allocation. Significantly, not a single pension

---

[1] As is explained in the Fee Brief, Plaintiffs' Counsel makes no specific demand for a set percentage of attorneys' fees. Rather, the Court appointed two Special Masters who are reviewing the fee application and will make a recommendation to the Court of up to 28% of the Settlement Fund. Fee Brief at 17-18.

fund or other similar large investor has objected.[2] "The lack of objections to the requested attorneys' fees supports the request, especially because the settlement class includes large, sophisticated institutional investors." *In re Schering-Plough Corp. ENHANCE ERISA Litig.*, No. 08-cv-1432, 2012 WL 1964451, at *6 (D.N.J. May 31, 2012) (internal quotations omitted); *see also In re Schering-Plough Corp. Sec. Litig.*, No. 01-cv-0829, 2009 WL 5218066, at *6 (D.N.J. Dec. 31, 2009) (noting that out of 320,000 potential class members, "[o]nly two objections were made, which is strong evidence in favor of the reasonableness of the fee award"). Accordingly, the overwhelmingly positive reaction of the Class supports approval of the fee request and rejection of the two objections that have been filed.

        B.       THE ORLOFFS' OBJECTION IS MERITLESS

Preliminarily, the Orloffs fail to include the required information relating to their stock ownership. The Settlement Notice explicitly instructs Class Members that, in addition to identifying themselves and specifying the reasons for their objection, they "must include documents sufficient to prove the objector's membership in the Class such as the number of shares of Merck common stock, Merck call options, and/or Merck put options purchased, acquired, and sold during the Class Period, as well as the dates and prices of each such purchase, acquisition and sale." Settlement Notice at 15. The Orloffs failed to do so – their objection tersely and presumptively states: "Marshall Orloff, MD certifies class membership has been confirmed by the administrator and the Orloff objectors will provide their trade information in a supplemental filing prior to the final approval hearing as soon as it is provided by the brokers." Orloffs Obj. at 1. Since the Orloffs failed to satisfy the conditions for filing an objection, their objection should be disregarded. *See, e.g., In re Citigroup, Inc. Sec. Litig.*, No. 09-md-2070

---

[2] As noted in the Declaration of Gregg A. Jarrell (Feb. 7, 2011), at ¶¶1, 75, institutions held an average of 73.2%.of Merck's common shares outstanding during the period of May 1, 2006 through March 28, 2008. (ECF No. 121-2)

(SHS), 2013 WL 3942951, at *6 (S.D.N.Y. Aug. 1, 2013) (excluding objections "from individuals who did not provide the required evidence of class membership or who provided evidence indicating they were not class members").

Further, the Orloffs' statement in their objection that the Claims Administrator "confirmed" their class membership is, at best, deceptive. They had no communications with Epiq, the Claims Administrator, other than receiving the Settlement Notice. The Orloffs never contacted Epiq at all, whether to confirm membership in the Class or otherwise. *See* Thurin Supp. Decl. at ¶¶10-14.

More importantly, the bulk of the Orloffs' six-page objection consists of nothing more than a boilerplate discussion of the Court's role as fiduciary for the Class to ensure the fairness and reasonableness of the Settlement and fee request. Their "objection" is confined to a single paragraph where they contend that "Class counsel fails to disclose their actual lodestar in their motion." Orloffs Obj. at 5. That is clearly wrong. Lead Counsel filed detailed declarations and exhibits disclosing the "actual lodestar" by each law firm, and by each partner, associate, paralegal and other personnel at each law firm, noting the hours, hourly rate and lodestar for each person, with totals for each firm and for all the law firms together, as well as a summary chart of hours and lodestars by firm. *See* Joint Declaration of D. Berger and S. Graziano ¶¶135-136 and Exhibits G-M thereto. This information was available not only on PACER but also has been posted on the Settlement website since July 3, 2013. *See* Thurin Supp. Decl. at ¶7.

Moreover, the Orloffs make a conclusory assertion that the requested fees and multiplier are not "justif[ied]" under the circumstances. *See* Orloffs Obj. at 5. The Orloffs fail to explain how much of the requested fee request is unjustified, nor do they propose what fee amount they would find to be reasonable. Likewise, they do not explain why this case warrants a lower fee,

4

nor do they address any of the factors enumerated in *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190 (3d Cir. 2000) that must be considered in evaluating a fee request. They do not present any argument, much less any legal authority, to support their *ipse dixit* assertion that Plaintiffs' Counsel are only entitled to receive their lodestar.

As explained in detail in the Fee Brief, each of the *Gunter* factors supports an award of attorneys' fees at 28% of the Settlement Fund, given the size of the Settlement and the many significant risks that the litigation would yield no or very little recovery, leaving Plaintiffs' Counsel uncompensated for five years of time and substantial out-of-pocket expenses. Fee Br. at 21-34. The Fee Brief further explains that even the maximum 28% fee award would be similar to the percentages that are typically awarded by courts in the Third Circuit and this Court in common fund cases, and that such an award would be reasonable given the total lodestar (105,341.76 hours) and lodestar multiplier (only 1.34) that is at the low end of the fee multipliers awarded in this Court and the Third Circuit. *Id.* at 33-36. The Orloffs fail to address any of these points made in the Fee Brief, which support the fee request. The Orloffs' objection should be rejected.

### C.   THE DEJULIUS OBJECTION IS WITHOUT MERIT

The three-page DeJulius objection is equally baseless and should likewise be rejected. Preliminarily, DeJulius' stake is *de minimis*. DeJulius purchased two Merck shares (representing only .0000000014% of the total 1.386 billion shares that may have been affected by the conduct at issue) and incurred a recognized loss of $12.66 under the Plan of Allocation for those two shares, which represents between .0000000032% and .0000000018% of the estimated recoverable damages potentially ranging from $4-$7 billion (*see* Pls. Final Approval Brief at 23). In marked contrast, not a single institutional investor (each with a stake in the recovery likely in order of magnitude much larger than De Julius's) has objected to the request.

In addition, the substance of the DeJulius objection is meritless. First, DeJulius contends that "[i]t is impossible to determine based on the current record whether class counsel has claimed any portion of the lodestar in this case that it also claims in the Schering Plough case." DeJulius Obj. at 1. DeJulius hypothesizes that "if indeed this occurred, then class counsel is seeking a double recovery for the same work." *Id*. This baseless conjecture fails.

As stated in the Joint Declaration filed in this case and in the declarations filed on behalf of each of the individual law firms, the lodestar submitted by each firm (and each partner, associate and paralegal at each firm) is for time spent on *this* case. *See* Joint Decl. at ¶135. *See also id.* at ¶136 (noting 105,341.76 total hours at a "collective lodestar value of $44,941,902.75" for work on "the investigation, prosecution and resolution of *the Action*") (emphasis added).[3] Thus, Lead Counsel did make clear that "no portion of the lodestar claimed in this case was claimed in the Schering Plough case." DeJulius Obj. at 1. DeJulius' conjecture about double billing is clearly baseless. There has not been any double counting of hours.

Second, DeJulius contends that "class counsel have not provided any justification for awarding an 11% higher fee in Merck than the one requested in Schering Plough." DeJulius Obj. at 2. As discussed above, the Fee Brief detailed the myriad risks confronting Lead Plaintiffs and Lead Counsel that they would recover nothing at all, despite years of contentious litigation and successes on various motions (*e.g*., overcoming Defendants' motions to dismiss and for summary judgment, successfully obtaining class certification).

---

[3] Each of the supporting declarations for each of the law firms comprising Plaintiffs' Counsel likewise detailed the total hours and lodestar value for time "expended on *this Action*." *See* Exs. G - L to Joint Declaration (all providing lodestar hours and value for time "expended on this Action"); *see also* Ex. M. to Joint Decl. (summarizing hours, lodestar and expenses by each firm in the *Merck* litigation).

6

DeJulius contends that the "market rate" for the *Merck* and *Schering* fee reqests is 17% because, according to an article DeJulius cites, "[t]he mean fee for cases that settle for between $250 million and $500 million is 17.8%" and "[t]he mean fee for cases that settle for between $100 million and $250 million is just slightly higher at 17.9%." DeJulius Obj. at 1-2, citing Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements And Their Fee Awards*, 7 J. EMPIRICAL LEGAL STUD. 811 (2010). However, the Fitzpatrick article does not undercut Lead Counsel's fee request. The article addressed only settlements in 2006-2007. Further, that the average fee award may be lower for settlements in 2006-2007 of a size similar to that in Merck (or Schering) does not mean that there were not comparable settlements during that time frame, or thereafter, with fee awards at percentages similar to that sought here. In fact, an average or "mean" is just that – there were obviously awards above and below the 17% range.

In fact, the Fee Brief cites several cases awarding fee percentages at 33⅓% of the common fund, including the related Schering and Merck sales marketing actions. *See* Fee Brief at 33-34. In other large settlements in this District, the fee award was at or near 28% of the fund. *See, e.g., In re Aremissoft Corp. Sec. Litig.*, 210 F.R.D. 109 (D.N.J. 2002) ($194 million settlement, 28% fee award); *In re Remeron Direct Purchaser Antitrust Litig.*, No. 03-cv-0085, 2005 WL 3008808 (D.N.J. Nov. 9, 2005) ($75 million settlement, 33⅓% fee award).

Third, the Fitzpatrick article provided no analysis of the risks of litigation and other similar factors that may warrant a higher fee award, and DeJulius' contention that "the risk of both cases was comparable" is wrong. DeJulius Obj. at 2. Here, there were more difficulties in establishing Defendants' scienter than were present in the Schering case, as (among other facts): (1) all the trial data was maintained by Schering employees; (2) Schering, not Merck, statisticians purportedly engaged in the early review and statistical analysis of the ENHANCE

7

trial data; and (3) Merck's purported discovery of the trial's failure came from Schering's CEO in a meeting for which there is no documentation of its substance nor any corroborating testimony. *See* Fee Br. at 24-26. The direct involvement of *Schering* defendants and other Schering employees made proving scienter in this case even more difficult.[4]

Additionally, there was a vast disparity between the two cases in the ability to prove loss causation. Here, there was a stark possibility that loss causation would not be established because Merck's stock price did not drop following the January 14, 2008 disclosure of the "top line" ENHANCE results. Defendants argued throughout this litigation that since the January 14, 2008 announcement disclosed that the trial had failed, that announcement fully cured the alleged fraud (which meant that Lead Plaintiffs in *Merck* would recover nothing). *Id*. at 26-27. This problem in proving loss causation did not exist in *Schering* as Schering's stock plunged significantly following the January 14, 2008 disclosure.[5] Additionally, causation need not be established to prevail on the Section 11 claim alleged in the *Schering* case. *See In re Adams Golf, Inc. Sec. Litig.*, 381 F.3d 267, 277 (3d Cir. 2004) ("Under sections 11 and 12(a)(2) [of the Securities Act of 1933], plaintiffs do not bear the burden of proving causation.").

Finally, the false statements at issue in the two cases were very different. Unlike in the *Schering* case, where many false statements concerned the actual status of the ENHANCE trial, here, almost all of the purportedly false statements concern Merck's quarterly and annual financial guidance. Defendants would likely argue that those statements were forward-looking, requiring Lead Plaintiffs to show that the statements were made with actual knowledge of their

---

[4] *Schering* also included a Section 11 claim not alleged in the *Merck* case that provides for strict liability for certain types of defendants who sign a false registration statement. *See* 15 U.S.C. §77k. Therefore, if the *Schering* plaintiffs prove that there was a false statement in the offering, no further proof of scienter is required.

[5] Schering's stock dropped 8% on January 14, 2008 and another 6.82% on January 15, 2008.

8

falsity. Fee Brief at 27-28. The defendants in *Schering* could not make that argument concerning the false statements about the ENHANCE trial at issue in that case.

As explained in the Fee Brief, all of these additional risks of prevailing in *Merck* (that are not present in the *Schering* case) warrant a higher percentage fee award in this case.[6] The Court should decline DeJulius' unsupported request that "[t]he Court … treat the two fee requests in both cases as one fee request, with one lodestar-crosscheck." DeJulius Obj. at 1. The DeJulius objection should be rejected.

### D. COUNSEL FOR THE OBJECTORS ARE SERIAL OBJECTORS

The two objections filed in *Merck* were not filed by any institutional investors; they were filed by attorneys who are "professional objectors" who specialize in the cottage industry of objecting to class action settlements. Not only are the objections meritless, they are mere attempts to extract money and should be rejected out of hand.

Mr. Turkish and/or the Orloffs have submitted similar objections in many other class actions. *See* Cecchi Dec., Exs. 1, 3, 5, 7- 8, 9, 11-14, 16-17. Additionally, while the Orloffs' objection was filed by a New Jersey attorney, Forrest S. Turkish, Plaintiffs have reason to believe that it was penned by Darrell Palmer, a California attorney and another seasoned objector to class action settlements with whom Mr. Turkish has been associated in the past.[7] *See* Cecchi Dec., ¶¶3-5; Exs. 1-6, 9-10. Mr. Turkish has previously filed an objection on behalf of the Orloffs (and Palmer), where Mr. Palmer's involvement remained concealed. *See* Cecchi Dec.,

---

[6] While the fee percentages requested in the two cases are different, the lodestar multipliers are similar: 1.34 multiplier requested in this case, and 1.3 requested in *Schering*.

[7] Mr. Palmer is not mentioned in the Orloffs' objection, but the Orloffs are located in California where Mr. Palmer maintains an office. Additionally, Mr. Turkish's lack of involvement in drafting the Orloffs' objection is further supported by the caption alone, which identifies the filing "In the United States District Court For The Southern District Of New Jersey." Any New Jersey lawyer knows that Newark is in the northern part of the state and, more importantly, that there is only one District of New Jersey.

9

Exs. 9-10. Mr. Palmer represents the Orloffs, and based on his prior history of drafting objections and simply using Mr. Turkish to file them, it is reasonable to assume that such is the case here as well.

Counsel for DeJulius – John Pentz – is another serial objector having filed objections in at over fifty class actions in addition to this one. As numerous courts across the country have recognized, Pentz has routinely made meritless objections to class action settlements and fee requests, and lodged appeals to the denials of those objections, in order to leverage a fee for himself. *See, e.g.*, *Dewey v. Volkswagen of Am.*, 728 F. Supp. 2d 546, 575 n.19 (D.N.J. 2010), *rev'd and remanded by*, 681 F.3d 170 (3d Cir. 2012) (summarizing cases criticizing Pentz's objections); *In re Wal-Mart Wage & Hour Emp't Practices Litig.*, No. 06-cv-00225, 2010 WL 786513, at *1, 2 (D. Nev. Mar. 8, 2010) (Pentz has a "documented history of filing notices of appeal from orders approving other class action settlements, and thereafter dismissing said appeals when [he] and [his] clients were compensated by the settling class or counsel"); *Barnes v. FleetBoston Fin. Corp.*, No. 01-cv-10395-NG, 2006 WL 6916834, at *1, 2 (D. Mass. Aug. 22, 2006) (Pentz is a "professional objector" who seeks to "make a living simply by filing frivolous appeals and thereby slowing down the execution of settlements").[8]

"Federal courts are increasingly weary of professional objectors" such as those who filed in this case. *In re Initial Pub. Offering Sec. Litig.,* 728 F. Supp. 2d 289, 295 n.37 (S.D.N.Y. 2010); *O'Keefe v. Mercedes-Benz USA, LLC*, 214 F.R.D. 266, 295 n. 26 (E.D. Pa. 2003) (same).

---

[8] *See also In re Initial Pub. Offering Sec. Litig.*, 721 F. Supp. 2d 210, 214, 215 (S.D.N.Y. 2010) (concluding that Pentz is a "serial objector" and there was evidence that he acted in "bad faith" and engaged in "vexatious conduct"); *In re AOL Time Warner ERISA Litig.*, No. 02-cv-8853 (SWK), 2007 WL 4225486, at *3 & 1 n.2 (S.D.N.Y. Nov. 28, 2007) (Pentz's objection "contained several arguments that were irrelevant or simply incorrect," were "counterproductive," and were supported by "*no* evidence whatsoever") (emphasis in original).

10

Decl. of Prof. Samuel Issacharoff ¶33, *In re Checking Account Overdraft Litig.*, No. 09-md-02036-JLK, Dkt. No. 1885-7 (S.D. Fla. Sept. 16, 2011) ("professional objectors . . . bring objections, typically of a generic sort, that are lodged primarily for the purposes of delay and to extract (indeed, often, to extort) payment to the objector's counsel to go away").

Lead Counsel respectfully submit that, under the circumstances, the Court should view the two objections filed in this case with a healthy dose of skepticism, if not outright rejecting them. *See, e.g.*, *In re Rite Aid Corp. Sec. Litig.*, 269 F. Supp. 2d 603, 610 n.9 (E.D. Pa. 2003), *vacated on other grounds and remanded*, 396 F.3d 294 (3d Cir. 2005) (rejecting baseless objection as "another vehicle for a professional gadfly" and decrying objector's counsel who had "become a twelfth-hour squeaky wheel"); *Shaw v. Toshiba Am. Info. Sys., Inc.*, 91 F. Supp. 2d 942, 973-74 (E.D. Tex. 2000) (criticizing "obviously 'canned' objections filed by professional objectors who seek out class actions to simply extract a fee by lodging generic, unhelpful protests").

## CONCLUSION

For all the foregoing reasons, Lead Counsel respectfully request that the Court reject the objections that have been filed in this case and grant Plaintiffs' Counsel's request for an award of attorneys' fees.

Dated: August 13, 2013

**CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY & AGNELLO**
*Co-Liaison Counsel*

　　　/s/ James E. Cecchi　　　
JAMES E. CECCHI

Jay W. Eisenhofer
Daniel L. Berger
John C. Kairis
**GRANT & EISENHOFER P.A.**
485 Lexington Avenue
New York, New York 10017

Salvatore J. Graziano
Adam H. Wierzbowski
Laura H. Gundersheim
**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
1285 Avenue of the Americas

11

| | |
|---|---|
| (646) 722-8500 | New York, New York 10019 <br> (212) 554-1400 |
| *Lead Counsel for Lead Plaintiffs and the Class* | *Lead Counsel for Lead Plaintiffs and the Class* |