UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE MERCK & CO. INC. VYTORIN /ZETIA SECURITIES LITIGATION | ) ) Civil Action No. 08-2177 (DMC)(JAD) ) ) |

### OPPOSITION TO SPECIAL MASTER'S REPORT

Class member Franklin DeJulius submits this opposition to the Special Masters' Report and Recommendation on Attorneys' Fees filed on August 28, 2013. The Special Masters completely misconstrue the signficance of the 15% fee agreement between ABP and Grant & Eisenhofer. They neglect clear Third Circuit precedent that holds that a fee agreement negotiated between a lead plaintiff and class counsel is the presumptively reasonable fee, and must be enforced unless there is substantial evidence submitted to overcome that presumption. The Special Masters simply focused on whether the fee agreement could be enforced as a matter of contract law, rather than its importance under the PSLRA.

The PSLRA imposes a new methodology of fee-setting in securities class actions, as the Third Circuit explicitly recognized in *In re Cendant Corp. Litig.*, 264 F.3d 201 (3rd Cir. 2001).

> Although in general the court should use the same seven-factor test that our cases have developed for reviewing fee requests in other class action contexts, review in PSLRA cases must be modified to take into account the changes wrought by the Reform Act. The biggest change, we believe, is that *courts should afford a presumption of reasonableness to fee requests submitted pursuant to an agreement between a properly-selected lead plaintiff and properly-selected lead counsel.*
>
> This is not to say, however, that the presumption cannot be overcome. There is an arguable tension between the general schema of the PSLRA on the one hand and its over arching provision that requires the court to insure that counsel fees not exceed a reasonable amount ... on the other.

> We hold that the presumption will be rebutted when a district court finds the fee to be (prima facie) clearly excessive.

*In re Cendant Corp. Litig.*, 264 F.3d 201, 220-221 (3rd Cir. 2001)(emphasis added). "The aim in this context is not to assess whether the fee request is reasonable; instead, the goal is to determine whether the presumption of reasonableness has been rebutted." *Id.* at 284.

Federal courts "accord a presumption of reasonableness to any fee request submitted pursuant to a retainer agreement that was entered into between a properly-selected lead plaintiff and a properly-selected lead counsel." *Id.* at 282.[1]

> The PSLRA establishes a model of client control that extends not only to appointment of counsel but also to monitoring of counsel and negotiation of the fee... The fee reached by agreement between the "most adequate" plaintiff and counsel should be accepted by the court unless (1) it is clearly excessive; (2) it has been rendered unfair by unforeseen developments; or (3) it is found in an ex post review that the fee was not reached by arm's length negotiations between lead plaintiff and counsel.

Third Circuit Task Force Report, *Selection of Class Counsel*, 208 F.R.D. 340, 425-26 (2002).

---

[1] *See also In re Lucent Techs., Inc. Sec. Litig.*, 327 F. Supp. 2d 426, 432 (D.N.J. 2004)("Under PSLRA a fee award negotiated between a properly appointed lead plaintiff and a properly appointed lead counsel as part of a retainer agreement enjoys a presumption of reasonableness."); *In re Enron Corp. Sec. Litig.*, 586 F. Supp. 2d 732, 766 (S.D. Tex. 2008)("The ex ante fee agreement here weighs heavily in support of awarding Lead Counsel 9.52% of the net settlement fund."); *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 356 (S.D.N.Y. 2005)("When class counsel in a securities lawsuit have negotiated an arm's-length agreement with a sophisticated lead plaintiff possessing a large stake in the litigation, and when that lead plaintiff endorses the application following close supervision of the litigation, the court should give the terms of that agreement great weight."); *In re HPL Techs. Sec. Litig.*, 366 F. Supp. 2d 912, 916 (N.D. Cal. 2005)("the earlier a fee arrangement is concluded between lead plaintiff and lead counsel, the more deference the court should pay to that fee agreement," because *ex ante* agreements are likely the product of "competition among counsel proposing to represent the class"); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 466 (S.D.N.Y. 2004)("In class action cases under the PSLRA, courts presume fee requests submitted pursuant to a retainer agreement negotiated at arm's length between lead plaintiff and lead counsel are reasonable.").

The ABP fee agreement was clearly an agreement between a properly-selected lead plaintiff and properly-selected class counsel. The fact that there are multiple lead plaintiffs and counsel does not detract from this fact. Especially when none of the other lead plaintiffs saw fit to negotiate a competitive fee agreement for the benefit of absent class members, the one fee agreement negotiated in this case should be presumptively valid.

In *Cendant*, the Third Circuit explained in detail the fundamental changes in fee-setting that were introduced by the PSLRA.

> We therefore believe that, under the PSLRA, courts should accord a presumption of reasonableness to any fee request submitted pursuant to a retainer agreement that was entered into between a properly-selected lead plaintiff and a properly-selected lead counsel. ...This presumption will ensure that the lead plaintiff, not the court, functions as the class's primary agent vis-a-vis its lawyers. Further, by rendering *ex ante* fee agreements more reliable, it will assist those agreements in aligning the interests of the class and its lawyers during the pendency of the litigation.
>
> Saying that there is a presumption necessarily assumes that it can be overcome in some cases, however. First, the presumption of reasonableness would likely be abrogated entirely were the court to find that the assumptions underlying the original retainer agreement had been materially altered by significant and unusual factual and/or legal developments that could not reasonably have been foreseen at the time of the original agreement....We stress, however, that not just any factual or legal development would suffice to justify a court's decision that the presumption of reasonableness had been rebutted on grounds of changed circumstances. Uncertainties are part of any *ex ante* negotiation and it should be presumed that the lead plaintiff and the lead counsel took the possibility of uncertainty into account in negotiating their agreement. Thus, only unusual and unforeseeable changes, i.e., those that could not have been adequately taken into account in the negotiations, could justify a court's decision to find the presumption abrogated.

264 F.3d at 282-283.

Here the ABP fee agreement was entered into by sophisticated counsel G&E at a time when the alleged increased riskiness of the Merck case was known, and when the amount of potential recovery could be anticipated. In the context of this risk/reward environment, G&E agreed to cap its fees to no more than 15% of the amount recovered, and to attempt to get other counsel to agree to the proposed fee schedule.[2]

G&E generated more than half of the lodestar in this case. Therefore, if G&E, which had far more at risk than any other firm, is willing to abide by its 15% fee agreement, then Bernstein Litowitz and the other firms should also be so bound.

The ABP retainer agreement is consistent with the prevailing market rate in cases that settle for more than $200 million, as argued in DeJulius' fee objection. It is not surprising that G&E would have agreed to a 15% fee at the time this case was filed.

Furthermore, class counsel was required to disclose the existence of the fee agreement in the notice mailed to class members. *See In re Bristol Myers Squibb Sec. Litig.*, 2007 U.S. App. LEXIS 18093 (3rd Cir. 2007) at *6 ("it would have been preferable for lead counsel to disclose the original fee agreement in the notice"). There is no mention of the 15% ABP fee agreement in the Notice of Proposed Settlement that was sent to the class. This information is critical in allowing absent class members to evaluate class counsel's fee request, especially in light of the PSLRA's presumption that that agreement is reasonable.

---

[2] The Special Masters' finding that the phrase "other counsel" refers to New Jersey liaison counsel only is unreasonable, since a local counsel would be automatically bound by lead counsel's fee agreement with ABP and would not be free to request a higher fee percentage than its employer agreed to. Thus, there would be no need to get local counsel to agree to be bound by their own client's fee agreement. The phrase "other counsel" clearly refers to Bernstein Litowitz and the other co-class counsel firms.

4

Finally, the Special Masters concluded that a 15% fee would result in a negative lodestar multiplier, and therefore disregarded the ABP fee agreement. Objector DeJulius suggested that class counsel receive a fee of 17%, however, which is the same percentage requested in the Schering Plough action. In contrast to a 15% fee, a 17% fee, a 2% upward adjustment from the presumptively reasonable fee, would give class counsel 81% of its lodestar. A 20% fee would give class counsel almost their entire lodestar, which would be more than adequate given the inevitable duplicative and redundant billing present in every class action with multiple firms. In fact, many courts routinely discount class counsel's lodestar by 10-20% to account for such padding in lieu of a line-by-line time sheet review.

There is absolutely no justification for a 13-percentage point upward adjustment to class counsel's fee in this case, in which a Lead Plaintiff agreed with the class counsel firm with the greatest lodestar to limit attorneys' fees to 15%. Any analysis of an upward adjustment to the 15% must begin with that figure, and be adjusted no higher than the amount of class counsel's lodestar.

## CONCLUSION

Wherefore, Objectors pray that this Court enforce the fee agreement that G&E entered into with ABP, and in the alternative award Class Counsel a fee of no more than 17% in this megafund settlement.

Respectfully submitted,
Franklin DeJulius

By his attorneys,

/s/ Vincent S. Verdiramo
VINCENT S. VERDIRAMO
VERDIRAMO & VERDIRAMO ESQS, PA
3163 Kennedy Blvd.
Jersey City NJ 07306
(201) 798-7082
(201) 798-4627
mmf036@aol.com

John J. Pentz,
19 Widow Rites Lane
Sudbury, MA 01776
Phone: (978) 261-5725
Fax: (978) 405-5161
Clasaxn@earthlink.net

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document was filed via the ECF filing system on September 10, 2013, and that as a result electronic notice of the filing was served upon all attorneys of record.

/s/ Vincent S. Verdiramo
Vincent S. Verdiramo

6