# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE MERCK & CO., INC. VYTORIN/ ZETIA SECURITIES LITIGATION | Civil Action No. 08-2177 (DMC) (JAD) |

## RESPONSE TO DEJULIUS' OPPOSITION TO SPECIAL MASTERS' REPORT

Jay W. Eisenhofer
Daniel L. Berger
John C. Kairis
**GRANT & EISENHOFER P.A.**
485 Lexington Ave.
New York, NY 10017
(646) 722-8500
*Counsel for Lead Plaintiffs and the Class*

Max W. Berger
Salvatore J. Graziano
**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
1285 Avenue of the Americas
New York, NY 10019
(212) 554-1400
*Counsel for Lead Plaintiffs and the Class*

James E. Cecchi
Lindsey H. Taylor
Donald A. Ecklund
**CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, New Jersey 07068
(973) 994-1700
*Co-Liaison Counsel for the Class*

Stephen A. Weiss
Christopher A. Seeger
**SEEGER WEISS LLP**
550 Broad Street
Newark, New Jersey 07102
(973) 639-9100
*Co-Liaison Counsel for the Class*

In his Opposition To Special Masters' Report ("Opposition"), professional objector Franklin DeJulius ("DeJulius")[1] does not dispute that Lead Plaintiffs and Lead Counsel faced significant obstacles in establishing key elements of their claims (including scienter, loss causation and damages) and the stark possibility of non-payment, warranting "a 'premium' for [the] success" achieved in this case. Report And Recommendations Of The Special Masters Relating To The Award Of Attorneys' Fees And Expenses ("Report"), at 71.[2] Instead, DeJulius argues that the Court should ignore that the Special Masters concluded that ten separate factors all support a fee award of 28% of the common fund (Report at 62-77) and that each of the Court-appointed Lead Plaintiffs, including Stichting Pensioenfonds ABP ("ABP"), supports an award of attorneys' fees at 28%. In addition to repeating arguments already addressed in Lead Plaintiffs' Memorandum, DeJulius contends that: (1) the "cap" on fees of "no more than 15% of the amount recovered" in the ABP retention letter with Grant & Eisenhofer P.A. ("G&E") is "presumptively

---

[1] As pointed out in Lead Plaintiffs' Memorandum of Law In Response To Objections To Motion For An Award Of Attorneys' Fees ("Lead Plaintiffs' Memorandum" or "LP Mem.") (ECF No. 339), DeJulius' stake is *de minimus* – he purchased only two Merck shares, representing only .0000000014% of the total 1.386 billion shares that may have been affected by the alleged fraud). LP Mem. at 5.

[2] DeJulius has not objected to either Lead Counsel's request for reimbursement of expenses or Lead Plaintiffs' application for reimbursement of costs and expenses. Accordingly, the Special Masters' recommendation that those applications be approved should be adopted by the Court.

valid" pursuant to the Third Circuit's decision in *In re Cendant Corp. Litigation*, 264 F.3d 201 (3d Cir. 2001);[3] and (2) Lead Counsel was required to disclose the ABP retention letter in the Class notice. DeJulius Opp. at 4. DeJulius' Opposition is without merit.

1. Unlike in *Cendant*, all of the Lead Plaintiffs here support the Special Masters' recommendation that counsel be awarded 28% of the Settlement Fund.[4] International Fund Management, S.A. Luxemburg ("IFM"), the Jacksonville Police and Fire Retirement System ("Jacksonville") and the General Retirement System of the City of Detroit ("Detroit") each submitted declarations in connection with Lead Counsel's Motion for an Award of Attorneys' Fees in which they supported an attorneys' fee award of 28%. *See* ECF No. 334-3. ABP, which had executed a retention letter prior to moving for lead plaintiff calling for an attorneys' fee of 15%, determined at the conclusion of the action and in light of the results achieved

---

[3] While DeJulius argues that the 15% amount referenced in ABP's retainer is "presumptively valid," he supports "a 2% upward adjustment" for an award of 17% to counsel. DeJulius Opp. at 5. Apparently, even DeJulius finds that *Cendant* does not control.

[4] DeJulius is wrong in contending that "G&E . . . is willing to abide by its 15% fee agreement." DeJulius Opp. at 4. G&E agreed in advance to defer to the Special Masters and seek whatever amount of fees the Special Masters recommend. *See* Lead Plaintiffs' Memorandum Of Law In Support Of Motion For An Award Of Attorneys' Fees And Reimbursement Of Expenses ("Fee Brief") at 37-38 (requesting that the "motion for attorneys' fees and costs in the amount recommended by the [Special Masters] be granted"); *see also id.* at 2 & 18 (deferring to Special Masters).

2

that the fee set forth in the retainer should not limit what the Court awards. After the Court appointed the Special Masters to review the entire record and issue a report and recommendation with respect to the amount of attorneys' fees and expenses the Court should award, ABP elected to review the Special Masters' Report prior to reaching a conclusion regarding the amount of an attorneys' fee it would consider appropriate. *See* APG Declaration dated July 1, 2013, at ¶13; ECF No. 334-3. ABP has now reviewed the Special Masters' Report and supports their recommendation that Plaintiffs' Counsel collectively be awarded a fee in the amount of 28% of the Settlement Fund (plus interest). Given that the Lead Plaintiff group (and each of them individually) have determined that an attorneys' fee of 28% of the Settlement Fund (plus interest) is reasonable, their judgment is entitled to significant deference. *See Cendant*, 264 F.3d at 223 n.3 ("it is the [lead plaintiff] group, not its constituent members, that speaks for the class").

The circumstances here are similar to those in *In re Bristol-Myers Squibb Securities Litigation*, No. 06-cv-2964, 2007 U.S. App. LEXIS 18093 (3d Cir. July 27, 2007). There, the Third Circuit held that an initial retention agreement entered into by the lead plaintiff and lead counsel that provided for an award of fees at rates lower than what lead counsel requested did not control. *Id*. at *3 ("Lead Counsel then asked the District Court to approve fees of $36.6 million (19.77% of the fund) . . . [which] was $14.7 million more than counsel would have received

under the original fee arrangement."). Specifically, in *Bristol-Myers*, the "lead plaintiff granted lead counsel's request to set aside the original fee arrangement and instead seek [a higher percentage] of the settlement fund from the District Court." *Id.* at *2. The Third Circuit held that the District Court did not abuse its discretion in granting lead counsel's fee request, particularly given the "extraordinarily substantial risks" assumed by lead counsel and the length and complexity of the litigation. *Id.* at *5. Similar facts here support the Special Masters' recommendation and Lead Counsel's request for attorneys' fees.

Because each of the Lead Plaintiffs here supports the requested attorneys' fee award, *Cendant* does not require a different result. In *Cendant*, one of the lead plaintiffs, the New York City Pension Funds ("NYCPF"), <u>objected</u> to the lead counsel's motion for an award of attorneys' fees and the other two *Cendant* lead plaintiffs – the California Public Employees' Retirement System ("CalPERS") and the New York State Common Retirement Fund ("NYSCRF") – did not affirmatively support the motion for attorneys' fees. *Cendant*, 264 F.3d at 229, 272. *See also id.* at 280-81 ("there is insufficient evidence that either CalPERS or NYSCRF gave their 'prior approval.' Lead Counsel originally relied on the fact that neither CalPERS nor NYSCRF objected to its fee request, but acquiescence (which is the most that a failure to object shows) is not the same thing as 'prior approval.'"). Thus, the Third Circuit found determinative that *Cendant* lead

4

counsel had never obtained approval of the *Cendant* lead plaintiff group prior to making their attorneys' fee request. *Id*. at 220. The exact opposite circumstances are present here, where Lead Counsel has obtained approval from the Lead Plaintiff Group (and each member of that group).[5]

2.  Citing only *Bristol Myers*, DeJulius contends that "class counsel was required to disclose the existence of the [ABP] fee agreement in the notice mailed to class members." DeJulius Opp. at 4. DeJulius is again wrong. While the *Bristol Myers* court in *dicta* stated that "it would have been preferable for lead counsel to disclose the original fee arrangement in the notice," it did not order lead counsel to issue a new notice and actually affirmed the district court's decision to approve fee request. *Id*. at *6. The class notice in *Bristol Myers* stated that counsel would seek fees of up to 20% of the settlement fund, which is the amount that counsel sought (and was awarded). *Id.* Similarly here, the Settlement Notice informed class members that a fee of up to 28% might be awarded, which is the amount recommended by the Special Masters. It would not inform, but would

---

[5] Notably, unlike in *Cendant* where the lead counsel would have been awarded a multiplier on their time of more than 45 had the Third Circuit affirmed the District Court's attorney fee award (*Cendant*, 264 F.3d at 286), if the retention agreement between ABP and G&E were to control (which it does not), Lead Counsel would not only fail to be compensated for the hours it spent litigating such an extraordinary result in the face of formidable risk, but it would be reimbursed for only a fraction of its time. *See Bristol Myers*, 2007 U.S. App. LEXIS 18093, at *5 (granting fee request because "it would be bad policy to award less than the lodestar when counsel performed so well").

5

actually confuse the members of the Class had the Class notice set forth all the facts regarding the ABP retention letter that ABP has decided does not control and where ABP now supports an award at 28% of the fund, rather than at the 15% amount in the retention letter.

3. DeJulius (again) argues that "[t]he ABP retainer agreement is consistent with the prevailing market rate in cases that settle for more than $200 million." DeJulius Opp. at 4. But, as already made clear, "[a]n award of 28% of the Settlement Fund would be similar to the percentages that are typically awarded by courts in the Third Circuit, including this Court, in common fund cases." Fee Br. at 33 (citing cases); *see also* Report at 72-76 (discussing cases and concluding that award at 28% "is within the broad range of awards identified in *Cendant PRIDES* and also well within the ranges of studies of fee awards subsequently referred to by the Court of Appeals in both *Sullivan* and *Rite Aid*.").

4. DeJulius (again) makes the conclusory assertion that there is "duplicative and redundant billing present in every class action with multiple firms" and that "many courts routinely discount class counsel's lodestar by 10-20% to account for such padding in lieu of a line-by-line time sheet review." DeJulius Opp. at 5. As previously explained, no lodestar claimed in this case was claimed in the related Schering Plough case – "DeJulius' conjecture about double billing is clearly baseless." LP Mem. at 6.

In short, DeJulius has provided absolutely no reason to question the Special Masters' detailed analysis or depart from their well-reasoned recommendation and, thus, DeJulius' Opposition should be rejected.

## CONCLUSION

For all the foregoing reasons, Lead Counsel respectfully request that the Court reject the DeJulius Opposition to the Special Masters' Report and, consistent with the Special Masters' recommendation, award Lead Counsel attorneys' fees in the amount of 28% of the Settlement Fund, plus interest.

Dated: September 19, 2013

**CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY & AGNELLO**
*Co-Liaison Counsel*

/s/ James E. Cecchi
JAMES E. CECCHI

Jay W. Eisenhofer
Daniel L. Berger
John C. Kairis
**GRANT & EISENHOFER P.A.**
485 Lexington Avenue
New York, New York 10017
(646) 722-8500

Salvatore J. Graziano
Adam H. Wierzbowski
Laura H. Gundersheim
**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
1285 Avenue of the Americas
New York, New York 10019
 (212) 554-1400

*Counsel for Lead Plaintiffs and the Class*

*Counsel for Lead Plaintiffs and the Class*