NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE SCHERING-PLOUGH CORP. ENHANCE SECURITIES LITIGATION | Hon. Dennis M. Cavanaugh<br><br>**OPINION**<br><br>Civil Action No. 08-397 (DMC) (JAD) |
| IN RE MERCK & CO., VYTORIN/ZETIA SECURITIES LITIGATION | Civil Action No. 08-2177 (DMC) (JAD) |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon the following: 1) Motion for Final Approval of Class Action Settlement and Plan of Allocation by Lead Plaintiffs appointed in the action In Re Merck & Co., Vytorin/Zeita Secutiries Litigation (the "Merck Action"); 2) Motion for Final Approval of Class Action Settlement and Plan of Allocation by Lead Plaintiffs appointed in the action In Re Schering-Plough Corp. Enhance Securities Litigation (the "Schering Action"); and 3) Report and Recommendation of the Special Masters Relating to the Award of Attorneys' Fees and Expenses (the "Report"). Pursuant to FED. R. CIV. P 78, no oral argument was heard. Based on the following and for the reasons expressed herein, this Court **grants** both Motions for Final Approval of Class Action Settlement and Plan of Allocation and **adopts** The Report in its entirety.

1

## I. BACKGROUND

The facts of this case are well known. The Settlement for the Schering Action provides for the payment of $473,000,000 in cash. The Settlement for the Merck Action provides for the payment of $215,000,000 in cash. Lead Plaintiffs for the Schering Action filed a Motion for Final Approval of Class Action Settlement and Plan of Allocation on July 2, 2013 (ECF No. 423). Lead Plaintiffs for the Merck Action also filed a Motion for Final Approval of Class Action Settlement and Plan of Allocation on July 2, 2013 (ECF No. 333).

The Report addresses two separate motions for an award of attorneys' fees and expenses arising out of the two settlements. Stephen M. Greenberg and Jonathan J. Lerner ("Special Masters") filed the Report on August 28, 2013 (ECF Nos. 435, 342). Subsequently, a Supplemental Report was filed.

## II. MOTIONS FOR SETTLEMENT APPROVAL

### A. LEGAL STANDARD

In determining whether to approve a class action settlement pursuant to Rule 23(e), "the district court acts as a fiduciary who must serve as a guardian of the rights of absent class members." In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d 768, 785 (3d Cir.1995) (quoting Grunin v. Int'l House of Pancakes, 513 F.2d 114, 123 (8th Cir. 1975), cert. denied, 423 U.S. 864 (1975) (citation omitted)).

Before giving final approval to a proposed class action settlement, the Court must determine that the settlement is "fair, adequate, and reasonable." Lazy Oil Co. v. Witco Corp., 166 F.3d 581, 588 (3d Cir. 1999); Walsh v. Great Atl. & Pac. Tea Co., 726 F.2d 956, 965 (3d Cir. 1983). In Girsh v. Jepson 521 F.2d 153, 157 (3d Cir. 1975), the Third Circuit identified nine so-called "Girsh factors," that a district court should consider when making this determination: (1)

the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. "These factors are a guide and the absence of one or more does not automatically render the settlement unfair." In re American Family Enterprises, 256 B.R. 377, 418 (D.N.J. 2000). Rather, the court must look at all the circumstances of the case and determine whether the settlement is within the range of reasonableness under Girsh. See In re Orthopedic Bone Screw Prods. Liab. Litig., 176 F.R.D. 158, 184 (E.D. Pa.1997); see also In re AT&T Corp., 455 F.3d 160 (3d Cir. 2006). In sum, the Court's assessment of whether the settlement is fair, adequate and reasonable is guided by the Girsh factors, but the Court is in no way limited to considering only those enumerated factors and is free to consider other relevant circumstances and facts involved in this settlement.

### B. DISCUSSION

This Court is convinced that the settlement is fair, adequate, and reasonable in light of the Girsh factors and will address several of the factors below.

The second Girsch factor is the reaction of the class to the settlement. This factor requires the Court to evaluate whether the number of objectors, in proportion to the total class, indicates that the reaction of the class to the settlement is favorable. The Court also notes that the second Girsh factor is especially critical to its fairness analysis, as the reaction of the class "is perhaps the most significant factor to be weighed in considering [the settlement's] adequacy." Sala v.

3

National R.R. Passenger Corp., 721 F. Supp. 80, 83 (E.D. Pa. 1989); In re Orthopedic Bone Screw Prods. Liab. Litig., 176 F.R.D. 158, 185 (E.D. Pa. 1997) (stating that a "relatively low objection rate militates strongly in favor of approval of the settlement" (internal citations omitted)). In the instant case, with respect to the Schering Action, over 346,000 Settlement Notice Packets were mailed to potential Class Members. To date, there has only been one Opposition on behalf of two class members filed (Aug 5, 2012, ECF No. 431). With respect to the Merck action, over 725,000 settlement notice packets were mailed to potential Class Members. To date, there has only been one Opposition on behalf of two class members filed (Aug 5, 2012, ECF No. 338). Accordingly, this factor weighs heavily in favor of granting the Motions.

The third Girsch factor is the stage of the proceedings and the amount of discovery completed. Under this factor, the Court must consider the "degree of case development that Class Counsel have accomplished prior to Settlement," including the type and amount of discovery already undertaken. GMC, 55 F.3d at 813. Here, the litigation is at a very advanced stage, as the Settlements were reached only a few weeks before trial was to begin. Discovery has been going on for years and has consisted of a vast number of depositions, the review of millions of documents, mocks trials, and extensive pre-trial-preparation. The parties have clearly had the opportunity to gain a detailed understanding of the case during this time. See Henderson v. Volvo Cars of N. Am., LLC, No. 09-4146 CCC, 2013 WL 1192479, at *9 (D.N.J. Mar. 22, 2013) ("Generally, post-discovery settlements are viewed as more likely to reflect the true value of a claim as discovery allows both sides to gain an appreciation of the potential liability and the likelihood of success." (citation omitted)). Thus, this factor weighs heavily in favor of granting the Motions.

The sixth Girsch factor is the risks of maintaining the class action through the trial. Here, there is nothing to suggest that the class will not maintain its certification if litigation continues. Thus, the Court does not place significant weight on this factor.

The eight Girsch factor is the range of reasonableness of the settlement fund in light of the best possible recovery. The ninth factor is the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. Together, these two factors "evaluate whether the settlement represents a good value for a weak case or a poor value for a strong case." In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 538 (3d Cir. 2004). These factors "test two sides of the same coin: reasonableness in light of the best possible recovery and reasonableness in light of the risks the parties would face if the case went to trial." Id. Here, factors eight and nine weigh in favor of granting the Motions. Plaintiffs for both the Merck Action and the Schering Action have set forth the numerous risks they would ultimately face at trial in detail in their Motions. Further, they are certain that even if they prevailed at trial, Defendants would appeal. Thus, it is reasonable for Plaintiffs to accept the large amounts offered in the Settlement. Although there is always a chance for greater recovery at trial, the benefits of accepting the immediate Settlement Funds outweigh the potential detriments that Plaintiffs face if a jury becomes involved.

In sum, this Court is satisfied that the settlements are fair, adequate, and reasonable in light of the Girsch factors. Accordingly, the Court **grants** both Motions for Final Approval of Class Action Settlement and Plan.

## II. THE REPORT

In The Report. The Special Masters recommend the Court to take the following actions with respect to the Schering Action: 1) grant Co-Lead Counsels' motion for an award of

attorneys' fees in the amount of 16.92% of the Settlement Fund (including interest earned on the fund amount); 2) grant the motion of Co-Lead Counsel to be reimbursed for expenses in the amount of $3,620,049.63; and 3) grant the motion of Lead Plaintiffs to be reimbursed for costs and expenses in the total amount of $102,447.26. Additionally, the Report recommends the Court to take the following actions with respect to the Merck Action: 1) grant Merck Co-Lead Counsels' motion for an award of attorneys' fees in the amount of 28% of the Settlement Fund (plus interest); 2) grant Co-Lead Counsel's Motion for Reimbursement of Litigation Expenses, as modified, in the amount of $4,079,435.55; and 3) grant the motion of Lead Plaintiffs to be reimbursed for costs and expenses in the total amount of $109,865.31.

In reviewing an attorneys' fees award in a class action settlement, the Third Circuit looks at a number of factors known as the "Gunter factors" and the "Prudential factors." In re AT & T Corp., 455 F.3d 160, 166 (3d Cir. 2006). The Gunter factors include:

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.

Id. at 165. The Prudential factors include:

> (1) the value of benefits accruing to class members attributable to the efforts of class counsel as opposed to the efforts of other groups, such as government agencies conducting investigations, (2) the percentage fee that would have been negotiated had the case been subject to a private contingent fee agreement at the time counsel was retained, and (3) any "innovative" terms of settlement

Id. (internal citations omitted). This Court is convinced that the Special Masters have done a thorough and accurate job in assessing the Motions for Attorneys' Fees by conducting a detailed analysis of the Gunter and Prudential factors in The Report. Accordingly, this Court adopts the Report in its entirety and approves of the recommendations set forth

therein.

## IV. CONCLUSION

For the foregoing reasons, this Court **grants** both Motions for Final Approval of Class Action Settlement and Plan of Allocation and **adopts** The Report in its entirety.

Dennis M. Cavanaugh, U.S.D.J.

Date: October __, 2013
Original: Clerk's Office
cc: Hon. Joseph A. Dickson, U.S.M.J.
All Counsel of Record
File